# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **MICHAEL SEEFELDT** individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | |
| vs. | **Case No.:**  19-188 |
| **ENTERTAINMENT CONSULTING INTERNATIONAL, LLC** <u>Serve at:</u> CSC-Lawyers Incorporating Service Company 221 Bolivar Street Jefferson City, MO 65101 | **JURY TRIAL DEMANDED** |
| **OUTFIELD BREW HOUSE, LLC d/b/a BUDWEISER BREW HOUSE**, <u>Serve at:</u> CSC-Lawyers Incorporating Service Company 221 Bolivar Street Jefferson City, MO 65101 | |
| *Defendants*. | |

## CLASS ACTION COMPLAINT

Plaintiff Michael Seefeldt brings this putative class action against Entertainment Consulting International, LLC ("ECI") and Outfield Brew House, LLC d/b/a Budweiser Brew House ("Brew House") (collectively "Defendants") for thousands of text messages sent in violation of the Telephone Consumer Protection Act ("TCPA").

### PARTIES, JURISDICTION, AND VENUE

1. At all relevant times, Plaintiff Seefeldt has been an individual over the age of 21 and a resident of Madison County, Illinois.

2. Defendant ECI is a Maryland limited-liability company with its principal place of business at 601 E. Pratt Street, 6th Floor, Baltimore, Maryland 21202.  ECI can be served through its Missouri registered agent CSC-Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson City, Missouri 65101.

3. Defendant Brew House is a Missouri limited-liability company with its principal place of business at 601 Clark Street, Suite C, St. Louis, Missouri 63102.  Brew House can be served through its Missouri registered agent CSC-Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson City, Missouri 65101.

4. This Court has subject matter jurisdiction over this TCPA action pursuant to 28 U.S.C. § 1331 in that this case involves a question of Federal law.

5. The Court has personal jurisdiction over Defendants and venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(2).  Defendants sent unlawful text messages to thousands of residents of this district and a substantial portion of the material events and omissions occurred here.  Defendants have a principal place of business here and/or transact significant amounts of business here, solicit customers here, direct telephone calls and text messages to phone numbers with area codes specific to this district, and enter into consumer and business contracts here.  Moreover, on information and belief, plaintiff Seefeldt received unlawful text messages from defendants while he was physically present within this district.

## NATURE OF THE ACTION

6. Defendants are part of a large group of businesses known as The Cordish Companies, which are commonly owned, controlled, and/or operated.

7. The Cordish Companies, including Defendants, work together toward common business objectives, much like a single large entity, and many even share the same directors,

officers, employees, equipment, and/or office locations.

8. The Cordish Companies attempt to separate and insulate various aspects of each business into separate entities, rather than a single entity, presumably for desired financial, tax, legal, liability, and other perceived business advantages.

9. For example, Defendant Brew House is a bar and restaurant located within the Ballpark Village entertainment district in St. Louis, Missouri.  Brew House controls the day-to-day management of the restaurant, such as interacting with the public, serving food and drinks to customers, cleaning the tables and floors, *etc*.

10. Defendant ECI, however, is a bar and restaurant management company that provides the corporate decision making for Defendant Brew House, Ballpark Village, as well as multiple other Cordish-controlled entities.

11. Defendant ECI controls, in whole or in part, corporate decisions for Defendant Brew House such as hiring and training, nationwide and local marketing, and creation and/or selection of hardware, software, web services, and other third-party services to be used by Brew House and other Cordish-controlled venues.

12. In approximately 2014, in order to market products and services, to increase revenue, to expand the customer base, and to pursue other marketing objectives, Defendants ECI and Brew House developed, acquired, licensed, and/or used custom, high-powered text-messaging programs ("Autodialer") that can select random, sequential, and/or stored phone numbers, dial such numbers, and send thousands of unsolicited automated text messages to such numbers.

13. Defendants ECI and Brew House also designed, developed, implemented, and supervised a comprehensive marketing scheme ("Text-Blast Scheme") whereby ECI and Cordish-controlled entities, including Defendant Brew House, compiled thousands of cell phone numbers

and used the Autodialer to bombard the individuals having such cell phone numbers with special offers, prizes, events, and happy hours via unsolicited text message.

14. As a result, within the last four years, Defendants ECI and Brew House intended to cause and did cause thousands of advertising and/or telemarketing text messages to be sent to cell phone numbers of Plaintiff and the putative class members in violation of the TCPA.

15. Specifically, Defendants (either directly or through a third-party telemarketer) sent unsolicited text messages to the cell phone numbers of Plaintiff and the putative class members promoting specials and events at the Brew House and encouraging Plaintiff and the putative class members to visit Brew House in order to spend money.

16. By sending the text messages at issue, Defendants have caused Plaintiff and the putative class members (as defined herein) actual harm.

17. Defendants sent such text messages despite the fact that:

(a) Plaintiff and the putative class members never provided prior express consent in a signed writing, or otherwise, for Defendants to use an autodialer (as defined by law) to send advertising or telemarketing text messages;

(b) Plaintiff and the putative class members were registered on the national do-not-call list commanding Defendants and other telemarketers not to send spam text messages; and

(c) Defendants failed to establish written policies and procedures to ensure compliance with the national and/or internal do-not-call rules and regulations, and failed to train its staff in compliance with such policies and procedures, prior to sending such text messages.

18.     Plaintiff, on his own behalf and on behalf of all others similarly situated, brings this lawsuit seeking an injunction requiring Defendants to cease all unsolicited text messaging and for an award of statutory damages under the TCPA to Plaintiff and members of the putative class.

### THE TELEPHONE CONSUMER PROTECTION ACT OF 1991
### 47 U.S.C. § 227, *et seq*

19.     The TCPA prohibits making any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system to any telephone number assigned to a cellular telephone service.

20.     A text message to a cellular telephone qualifies as a "call" under the TCPA.

21.     An "automatic telephone dialing system"[1] means any equipment that has the capacity to store telephone numbers to be called, or to produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

22.     The statutory definition of ATDS includes a device that stores telephone numbers to be called, regardless of whether those numbers were generated by a random or sequential number generator.

23.     If an ATDS is used to make a call that constitutes advertising[2] or telemarketing,[3] the caller must obtain prior express written consent before it may make such call.

24.     Prior express written consent must be expressly stated in a writing signed by the person providing the consent, clearly authorizing the calling party to use an ATDS, specifying the

---

[1]     Also referred to as "ATDS" or "autodialer".

[2]     Advertising means any material advertising the commercial availability or quality of any property, goods, or services.

[3]     Telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services.

phone number for which consent is being provided, and consent must not be a condition of purchasing any goods or services.

25.     Federal law also prohibits telemarketing calls to any residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of that is maintained by the federal government.

26.     Wireless subscribers who are registered on the national do-not-call list are presumed to be "residential subscribers."

27.     The TCPA provides for injunctive relief and the greater of actual damages or $500 per violation, which may be trebled where a defendant's conduct was done willfully or knowingly.

### FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

28.     Between January 24, 2015 and January 24, 2019, Defendants and/or their agents utilized an ATDS to send text messages to the wireless telephone numbers of Plaintiff and the putative class members.

29.     Specifically, the hardware and software used by Defendants and/or their agents not only has the capacity to store telephone numbers to be called, or to produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers, it was also specifically programmed to sequentially or randomly access stored telephone numbers and automatically send text messages to those numbers *en masse*.

30.     When attempting to collect and compile cell phone numbers from Plaintiff and the putative class members, Defendants did not disclose their intention to use an autodialer to send multiple, automated advertising and/or telemarketing text messages to such phone numbers.

31.     Plaintiff and the putative class members never provided express consent, in a signed writing or otherwise, for Defendants to send autodialed, advertising, and/or telemarketing text

messages to their cellular telephone numbers.

32. The text messages sent by Defendants to Plaintiff and the putative class members were commercial in nature with a clear commercial purpose—*i.e.*, to drive consumer traffic to Ballpark Village and/or Brew House.

33. Defendants' text messages are advertisements and/or constitute telemarketing as defined by the TCPA.

34. The text messages contain Defendants' brand name and location, they offer and promote specials and events Ballpark Village and/or Brew House, and they encourage Plaintiff and the putative class members to visit Ballpark Village and/or Brew House.

35. On information and belief, Defendants sent such advertising and/or telemarketing text messages without first establishing written policies or procedures to ensure compliance with the national and/or internal do-not-call rules and regulations, and failed to train its staff in compliance with such policies and procedures.

36. Defendants sent these text messages to Plaintiff and other putative class members' cellular telephone numbers who had their telephone numbers registered with the national do-not-call registry.

37. On information and belief, many of Defendants' text messages were sent within 12 months of one or more prior text messages, and Defendants lack an adequate system for preventing the transmission of numerous automated text messages to the same telephone number.

38. Defendants are aware that the above-described text messages are being sent to consumers and businesses without their prior express consent, and to consumers and businesses who have registered their phone numbers on the do-not-call registry, but Defendants continue to send them anyway.

39. Due to Defendants' unsolicited text messages, Plaintiff's and the putative class members' privacy was invaded, their solitude was disturbed, their phones were interfered with and lifespans depleted, including phone batteries, LCD screens, speakers, vibration motors, and other components.

### FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF SEEFELDT

40. At all relevant times, Plaintiff Seefeldt has paid a third-party provider for cellular telephone service and cellular data service on his personal cellular telephone, which has a "314" area code specific to Eastern Missouri.

41. On multiple occasions within the last four years, Defendants and/or their agents used an autodialer to send automated text messages to Plaintiff's cell phone.

42. Upon information and belief, for most if not all text messages at issue, Plaintiff Seefeldt was physically present in this district when Defendants and/or their agents used an autodialer to send automated text messages to Plaintiff's cell phone.

43. The text messages unlawfully sent to Seefeldt contained Defendants' brand name and location, they offered and promoted specials and events Ballpark Village and/or Brew House, and they encouraged Plaintiff to visit Ballpark Village and/or Brew House.

44. The text messages sent by Defendants and/or their agents to Plaintiff were made for a commercial purpose and are advertisements and/or constitute telemarketing as defined by the TCPA.

45. Plaintiff never provided prior express consent, in a signed writing or otherwise, for Defendants to send autodialed, advertising, and/or telemarketing text messages to his cell phone.

46. At all relevant times, Plaintiff had registered his wireless number with the national do-not-call registry and received confirmation that his do-not-call registration was effective.

47. Since the effective date of Plaintiff's registration on the national do-not-call list in and within the last four years, Defendants and/or their agents sent multiple advertising and/or telemarketing text messages to Plaintiff and, upon information and belief, several were within 12 months of one another.

## CLASS ACTION ALLEGATIONS

48. Plaintiff restates and incorporates by reference all paragraphs of this Complaint.

49. For Count I (the "Autodial Class"), Plaintiff brings this action on behalf of himself and on behalf of a putative class defined as:

> All persons and entities within the United States to whom Defendants (or a third party on Defendants' behalf) sent a text message to their cellular or wireless telephone, promoting special pricing or events at Ballpark Village and/or Brew House, between January 24, 2015 and January 24, 2019.

50. For Count II (the "DNC Class"), Plaintiff brings this action on behalf of himself and on behalf of a putative class defined as:

> All persons within the United States to whom, between January 24, 2015 and January 24, 2019, Defendants (or a third party on Defendants' behalf) sent more than one text message promoting special pricing or events at Ballpark Village and/or Brew House, within any twelve-month period.

51. Excluded from the above-defined classes are Defendants, any entity in which Defendants have a controlling interest, Defendants' officers, directors, and employees, Defendants' counsel, any persons or entities who have previously filed a TCPA lawsuit against Defendants (either individually or on behalf of a putative class), any persons or entities who have previously settled a TCPA claim with Defendants, the Court and Court personnel, and Plaintiff's counsel.

52. Excluded from the above-defined class are all persons and entities, if any, for whom

Defendants possess a tangible document or other tangible form (or authentic copy thereof) stating Defendants may use an ATDS to send advertising and/or telemarketing text messages to a specific cell phone number bearing the hand-written signature of such person or entity.

53.   Excluded from the above-defined class are all persons and entities, if any, for whom Defendants possess an electronic document or other electronic form (or authentic copy thereof) stating Defendants may use an ATDS to send advertising and/or telemarketing text messages to a specific cell phone number bearing the electronic signature of such person or entity.

54.   Excluded from the above-defined class are all persons and entities, if any, for whom Defendants possess an agreement to arbitrate TCPA claims (or authentic copy thereof) bearing the hand-written or electronic signature of such person or entity.

55.   **Numerosity – Fed. R. Civ. P. 23(a)(1).**  Plaintiff does not know how many members are in the putative class but believes them to be in the tens of thousands, if not more.  On information and belief, the number of class members is so numerous that their individual joinder is impracticable.  The precise number of putative class members and their phone numbers can be ascertained from information and records in the possession and control of Defendants or third parties acting on Defendants' behalf.

56.   **Existence and Predominance of Common Questions of Law and Fact – Fed. R. Civ. P. 23(a)(2) & 23(b)(3).**  Common questions of law or fact exist as to all members within the putative class and predominate over any questions solely affecting any individual member.  The predominating common legal and factual questions include the following:

    (a)   Whether Defendants and/or their agents used an automatic telephone dialing system to send text messages;

    (b)   Whether Defendants' text messages are advertisements;

  (c)  Whether Defendants' text messages constitute telemarketing;

  (d)  Whether Defendants obtained prior express consent in a signed writing specifically authorizing Defendants to send autodialed, advertising, and/or telemarketing text messages to the cellular telephone numbers of Plaintiff and the class members;

  (e)  Whether Defendants' text messages were sent willfully or knowingly;

  (f)  Whether Defendants (i) established and implemented written procedures to comply with the national do-not-call rules; (ii) trained its personnel in procedures established pursuant to the national do-not-call rules; (iii) maintained a list of telephone numbers Defendants may not contact; (iv) employed a version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call or text is made; and (v) maintained records documenting this process;

  (g)  Whether Defendants (i) established and implemented written procedures to comply with the internal do-not-call rules; (ii) trained its personnel in procedures established pursuant to the internal do-not-call rules; (iii) maintained an internal list of telephone numbers Brew House may not contact; (iv) employed a version of the internal do-not-call list containing numbers updated no more than 30 days prior to the date any call is made; and (v) maintained records documenting this process; and/or

  (h)  Whether, and to what extent, class members are entitled to equitable relief, including declaratory relief, a preliminary injunction, and/or permanent injunction.

57. **Typicality – Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of the putative classes he seeks to represent. The factual and legal bases of Defendants' liability to Plaintiff is the same for all putative class members: (i) Defendants' violated the TCPA by using an automatic telephone dialing system to send advertising and/or telemarketing text messages without obtaining prior express written consent in a signed writing; (ii) Defendants violated the TCPA by sending multiple advertising and/or telemarketing text messages without complying with the requirements of 47 C.F.R. § 64.1200(d).

58. **Adequacy of Representation – Fed. R. Civ. P. 23(a)(4).** Plaintiff will fairly and adequately protect the interests of the putative class members. Plaintiff has no interests that might conflict with the interests of the putative class members. Plaintiff will pursue the claims vigorously, and Plaintiff has retained counsel competent and experienced in TCPA class actions and complex litigation.

59. **Superiority – Fed. R. Civ. P. 23(b)(3).** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual class members is small compared with the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for class members, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court,

and presents no unusual management difficulties under the circumstances here.

## COUNT I - "AUTODIAL CLASS"
### VIOLATIONS OF THE TCPA, 47 U.S.C. § 227

60. Plaintiff restates and incorporates by reference all paragraphs of this Complaint.

61. The TCPA prohibits making any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system to any telephone number assigned to a cellular telephone service.

62. A text message to a cellular telephone qualifies as a "call" under the TCPA.

63. An "automatic telephone dialing system" means any equipment that has the capacity to store telephone numbers to be called, or to produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

64. The statutory definition of ATDS includes a device that stores telephone numbers to be called, regardless of whether those numbers were generated by a random or sequential number generator.

65. If an ATDS is used to make a call that constitutes advertising or telemarketing, the caller must obtain prior express written consent.

66. Prior express written consent must be expressly stated in a writing signed by the person providing the consent, clearly authorizing the calling party to use an ATDS, specifying the phone number for which consent is being provided, and consent must not be a condition of purchasing any goods or services.

67. Within the last four years, Defendants and/or their agents employed an ATDS to send non-emergency text messages to the cellular or wireless telephones of Plaintiff and the members of the Autodial Class.

68. The equipment employed has the capacity to store telephone numbers to be called,

13

or to produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

69. The equipment employed has the capacity to store telephone numbers to be called, regardless of whether those numbers were generated by a random or sequential number generator.

70. The text messages sent by Defendants and/or their agents to Plaintiff and the Autodial Class members were made for a commercial purpose and are advertisements and/or constitute telemarketing as defined by the TCPA.

71. The text messages contained Defendants' brand name and location, they offered and promoted specials and events Ballpark Village and/or Brew House, and they encouraged Plaintiff and the Autodial Class members to visit Ballpark Village and/or Brew House.

72. Plaintiff and the Autodial Class members never provided express consent, in a signed writing or otherwise, for Defendants to send autodialed, advertising, and/or telemarketing text messages to their cellular telephone numbers.

73. As a result of Defendants' conduct, Plaintiff and the Autodial Class members were harmed and are entitled to a minimum of $500 in damages for each unlawful text message.

74. Plaintiff and the Autodial Class members are also entitled to an injunction against future calls.

75. Defendants' text messages were willful and knowing, in that Defendants knew they were obtaining and storing cellular telephone numbers and employing equipment that would send autodialed, advertising, and/or telemarketing text messages to such numbers; Defendants intended that such equipment would in fact send automated text messages containing its brand name and location and promoting specials and events at Ballpark Village and/or Brew House; and Defendants knew they had not obtained prior express consent in writing, or otherwise, from

Plaintiff or the Autodial Class members to send such text messages.

76. The Court should treble the amount of statutory damages available to Plaintiff and the Autodial Class members and award $1,500 for each text message sent in violation of the TCPA.

WHEREFORE, Plaintiff, individually and on behalf the Autodial Class, seeks $1,500 per violation of the TCPA; a declaration that Defendants' telemarketing methods, acts and practices herein violate the TCPA; and an injunction prohibiting Defendants from continuing to engage in such unlawful methods, acts, and practices.

### COUNT II – "DNC CLASS"
### VIOLATIONS OF THE TCPA, 47 C.F.R. § 64.1200(d)

77. Plaintiff restates and incorporates by reference all paragraphs of this Complaint.

78. Defendants' text messages constitute advertising and/or telemarketing in that they contain its brand name and location, they promote specials and events at Ballpark and/or Brew House, and/or they encourage Plaintiff and the DNC Class members to visit Ballpark Village and/or Brew House.

79. Defendants sent more than one advertising and/or telemarketing text message within any twelve-month period to Plaintiff and the DNC Class members even though Defendants did not first institute procedures for initiating telemarketing calls or text messages that meet (or exceed) the following minimum standards:

- Written policies and procedures, available upon demand, for maintaining a do-not-call list;

- Policies and procedures for the training of personnel engaged in any aspect of telemarketing, on the existence and use of the do-not-call list;

- Policies and procedures for the recording of any request not to receive calls, at the time the request is made, including the subscriber's name, if provided, and telephone number, and honoring any such requests within a reasonable time from the date such request is made.

- Policies and procedures for employing a version of the internal do-not-call list containing numbers updated no more than 30 days prior to the date any call is made;

- Policies and procedures for providing the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted; and

- Policies and procedures for maintaining records documenting this process, for a period of not less than 5 years.

80. On information and belief, Defendants are not tax-exempt nonprofit organizations and are therefore required to comply with the minimum standards set forth in 47 C.F.R. § 64.1200(d).

81. On information and belief, Defendants did not implement any of the minimum standards required by 47 C.F.R. § 1200(d)(1)-(6).

82. As a result of Defendants' conduct, Plaintiff and the DNC Class members were harmed and are entitled to a minimum of $500 in damages for each unlawful text message.

83. Plaintiff and the DNC Class members are also entitled to an injunction against future calls.

84. Defendants' text messages were willful and knowing, in that Defendants knew they were sending advertising and/or telemarketing text messages to the cellular telephone numbers of Plaintiff and the DNC Class members without first implementing procedures and training required by 47 C.F.R. § 64.1200(d), but Defendants chose to send such text messages anyways.

85. The Court should treble the amount of statutory damages available to Plaintiff and the DNC Class members and award $1,500 for each text message sent in violation of the TCPA.

WHEREFORE, Plaintiff, individually and on behalf the DNC Class, seeks $1,500 per violation of the TCPA; a declaration that Defendants' telemarketing methods, acts and practices herein violate the TCPA; and an injunction prohibiting Defendants from continuing to engage in

such unlawful methods, acts, and practices.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims that are so triable.

Dated: February 7, 2019

Respectfully submitted,

/s/ Anthony L. DeWitt
Anthony L. DeWitt MO41612
Bartimus Frickleton Robertson Rader, PC
109 B East High Street
Jefferson City, MO  65101
573-659-4454

Edward D. Robertson, III MO58801
(pending Pro Hac)
Bartimus Frickleton Robertson Rader, PC
11150 Overbrook Road, Suite 200
Leawood, KS  66211
913-266-2300

*Attorneys for Plaintiff and all others similarly situated*