## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

**MICHAEL SEEFELDT**
**individually and on behalf of**
**all others similarly situated,**

         *Plaintiff*,

**vs.**

         **Case No.: 4:19-cv-00188-JMB**

**ENTERTAINMENT CONSULTING**
**INTERNATIONAL, LLC**

         **JURY TRIAL DEMANDED**

**OUTFIELD BREW HOUSE, LLC**
**d/b/a BUDWEISER BREW HOUSE,**

         *Defendants.*

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Anthony L. DeWitt MO41612
Bartimus Frickleton Robertson Rader, PC
109 B East High Street
Jefferson City, MO 65101
573-659-4454

Edward D. Robertson, III MO58801 (Pro Hac)
Bartimus Frickleton Robertson Rader, PC
11150 Overbrook Road, Suite 200
Leawood, KS 66211
913-266-2300

Ari Rodopoulos MO_____
Wood Law Firm, LLC
1100 Main Street, Suite 1800
Kansas City, MO 64105
office: 816-559-7645

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................ 1

II.  SUMMARY OF THE ACTION ..................................................................................... 1

III.  STATEMENT OF THE FACTUAL ALLEGATIONS ........................................................ 3

IV.  ARGUMENT ............................................................................................................. 6

(A)  CLASS CERTIFICATION IS APPROPRIATE FOR TEXT-BLASTING CLAIMS UNDER THE TCPA. 6

(B)  THIS CASE ESTABLISHES THE RULE 23(A) PREREQUISITES FOR CLASS ACTION

CERTIFICATION. .............................................................................................................. 7

(1)  The class is so numerous that joinder is impracticable. .............................................. 8

(2)  The class shares common questions of law and fact. ................................................... 9

(3)  The representative plaintiff's claims are typical of the class. .................................... 9

(4)  The representative plaintiff will fairly and adequately protect the interests of the

class.  10

(C)  THE RULE 23(B) REQUIREMENTS ARE SATISFIED. ......................................................... 11

(1)  Questions of law or fact common to the class predominate. .................................... 12

(2)  Class action is the superior method of adjudication. ................................................ 13

V.  CONCLUSION .......................................................................................................... 16

## **TABLE OF AUTHORITIES**

**Cases**

*Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988) ................................................................ 10

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 420 (5th Cir. 1998) ........................................... 15

*Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) ........................................... 9

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 622–23 (1997) .................................................... 12

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ...................................................... 14

*Arkansas Educ. Ass'n v. Bd. Of Educ.*, 446 F.2d 763, 765 (8th Cir. 1971) ..................................... 8

*Baby Neal v. Casey*, 43 F.3d 48, 56 (3rd Cir. 1994) ........................................................................ 9

*Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 ............................................................................... 12

*Blades v. Monsanto Co., 400 F.3d 562, 566 (8th Cir. 2005)* ........................................................... 6

*Blair v. Transam Trucking, Inc.*, No. 09-2443-EFM-KGG, 2015 WL 5006076, at *5 (D. Kan.
    Aug. 20, 2015) ............................................................................................................................ 10

*Boyd v. Ozark Air Lines, Inc.*, 568 F.2d 50, 54 (8th Cir. 1977) ....................................................... 8

*Brady v. LAC, Inc.*, 72 F.R.D. 22, 28 (S.D.N.Y. 1976) ................................................................... 14

*CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014) .................... 12

*Cummings v. Connell*, 402 F.3d 936, 945 (9th Cir. 2005) ................................................................ 7

*Dale v. DaimlerChrysler Corp.*, 204 S.W.3d 151, 181 (Mo. App. W.D. 2006 ............................ 13

*DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) ......................................... 10

*Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977), *cert. denied* 434 U.S. 856 (1977) 9

*Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 652 (C.D.Cal. 1996) ................................................... 15

*Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161, 1165 (7th Cir.1974) ............................... 13

*In re Bristol Bay, Alaska, Slamon Fishery Antitrust Litigation*, 78 F.R.D. 622, 628 (W.D. Wa. 1978) ............................................................................................................... 16

*In Re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 732 (N.D. Ill. 1977) ........................ 14

*In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1127-1128, n. 33 (7th Cir.), *cert. denied* 444 U.S. 870 (1979) ................................................................. 7

*In re Motor Fuel Temperature Sales Practices Litig.*, 292 F.R.D. 652, 668 (D. Kan. 2013)... 9, 14

*In re Northern Dist. Cal., Dalkon Shield, Etc.*, 693 F.2d 847, 856 (9th Cir. 1982)..................... 15

*K.L. by Dixon v. Valdez*, 167 F.R.D. 688, 691 (D.N.M. 1996).................................................... 10

*Karen S. Little, L.L.C. v. Drury Inns, Inc.,* 306 S.W.3d 577, 584 (Mo. App. E.D. 2010) ............. 7

*Karen S. Little, L.L.C.,* 306 S.W.3d at 582-83............................................................................ 13

*Linquist v. Bowen*, 633 F.Supp. 846, 859 (W.D. Mo. 1986) ........................................................ 10

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ................................................ 14

*Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 608 (D. Kan. 2014)...................... 9

*Paxton v. Union Nat. Bank*, 688 F.2d 552, 559-560 (8th Cir. 1982) ............................................. 8

*Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007)............ 13

*Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski*, 678 F.3d 640, 645 (8th Cir. 2012).... 6

*Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D.Ill. 1992) ............................. 9

*Siding and Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 444 n. 4 (N.D. Ohio 2012) ............................................................................................................... 8

*Siding and Insulation Co.*, 279 F.R.D........................................................................................ 12

*Sperry Rand Corp. v. Larson*, 554 F.2d 868, 873-4 n. 17 (8th Cir. 1977)................................... 10

*Vallario v. Vandehey*, 554 F.3d 1259, 1264 (10th Cir. 2009)....................................................... 6

*Welmaker v. W.T. Grant Co.*, 365 F.Supp. 531, 553 (N.D. Ga. 1972) .......................................... 7

**Other Authorities**

2 NEWBERG ON CLASS ACTIONS (3D ED. 1992) ............................................................... 8

*In the Matter of Rules and Regulations Implementing the TCPA of 1991*, FCC Report and Order,

    27 FCC Rcd. 1830, 1843, ¶ 32 (2012). ..................................................................... 2

Newberg on Class Actions § 4:49, at 195–96 (5th ed. 2012) ...................................... 12

**Rules**

47 U.S.C. § 227 .................................................................................... 1, 2, 13, 14

Fed. R. Civ. P. 23(b) ...................................................................... 11, 12, 13

Fed. R. Civ. P. 23(c)(1)(A) .......................................................................... 1

**Regulations**

47 C.F.R. § 64.1200(d)(1)-(6) .............................................................. 2, 10, 13

## <u>INDEX OF EXHIBITS</u>

|                                                                        | <u>EXHIBIT</u> |
| :--------------------------------------------------------------------- | :------------: |
| Deposition of Kellie Rush                                              | 1              |
| Defendant's Sixth Supplemental Interrogatory Answers                   | 2              |
| Deposition of Dana Biffar                                              | 3              |
| Brew House's Supplemental RFA Answers                                  | 4              |
| Deposition of Steve Klingbeil                                          | 5              |
| List of Cases Holding Class Certification to be Appropriate Under the TCPA | 6          |

COMES NOW Plaintiff and submits the following Memorandum in Support of Plaintiff's Motion for Class Certification:

## I.     INTRODUCTION

Class actions that allege violations of the Federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, are commonly certified under Rule 23 because, conceptually, they raise straight-forward legal and factual issues common to all class members, and such common issues predominate any collateral matters that might arise.  This action is no different, and now is an early and practicable time to decide whether it should be certified as a class action.  *See* Fed. R. Civ. P. 23(c)(1)(A) ("At an early practicable time after a person sues . . . as a class representative, the court must determine by order whether to certify the action as a class action.").

## II.     SUMMARY OF THE ACTION

Plaintiff alleges Defendants Entertainment Consulting International, LLC ("ECI") and Outfield Brew House, LLC d/b/a Budweiser Brew House ("Brew House") (collectively "Defendants") sent thousands of unsolicited text messages promoting special pricing or events at Ballpark Village and/or Brew House during the four-year period prior to the filing of Plaintiff's Complaint, i.e., between February 7, 2015 and February 7, 2019.  Plaintiff alleges Defendants' text blasting violated the TCPA.

In pertinent part, the TCPA provides "[i]t shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent[1] of the called party) using any automatic telephone dialing system . . . to

---

[1]      The FCC has clarified that "prior express consent" must (i) be in writing; (ii) be signed by the person providing the consent; (iii) clearly authorize the calling party to use an autodialer or ATDS; (iv) specify the telephone number to which the person is consenting to be called; and (v)

any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides that a person may recover minimum statutory damages of $500 for each violation of this provision, which may be trebled for willful or knowing conduct.  47 U.S.C. § 227(b)(3).

Plaintiff also alleges Defendants violated the TCPA by sending multiple telemarketing text messages to persons who had registered their phone numbers on the national do-not-call list without first establishing the written policies, procedures, and training the TCPA requires.  In pertinent part, TCPA regulations enacted pursuant to 47 U.S.C. § 227(c) provide "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted [certain] procedures for maintaining a list of persons who request not to receive telemarketing calls[.]" 47 C.F.R. § 64.1200(d)(1)-(6).  The TCPA provides that a person may recover statutory damages of up to $500 for each violation these regulations, which may be trebled for willful or knowing conduct. 47 U.S.C. § 227(c)(5).

Plaintiff respectfully asks the Court to certify this action as a class action pursuant to Rule 23 with the Plaintiff class defined as:

<u>For Count I (the "Autodial Class")</u>:

All persons and entities within the United States to whom Defendants (or a third party at Defendants' direction) sent a text message to their cellular or wireless telephone, promoting special pricing or events at Ballpark Village and/or Brew House, between February 7, 2015 and February 7, 2019.

<u>For Count II (the "DNC Class")</u>:

All persons within the United States to whom, between February 7, 2015 and February 7, 2019, Defendants (or a third party at Defendants' direction) sent more than one text message promoting

---

not be a condition of purchasing any goods or services. *In the Matter of Rules and Regulations Implementing the TCPA of 1991*, FCC Report and Order, 27 FCC Rcd. 1830, 1843, ¶ 32 (2012).

special pricing or events at Ballpark Village and/or Brew House, within any twelve-month period.

<u>Excluded from the above-defined classes are:</u>

Defendants, any entity in which Defendants have a controlling interest, Defendants' officers, directors, and employees, Defendants' counsel, any persons or entities who have previously filed a TCPA lawsuit against Defendants (either individually or on behalf of a putative class), any persons or entities who have previously settled a TCPA claim with Defendants, the Court and Court personnel, and Plaintiff's counsel.

All persons and entities, if any, for whom Defendants possess a tangible document or other tangible form (or authentic copy thereof) stating Defendants may use an ATDS to send advertising and/or telemarketing text messages to a specific cell phone number bearing the hand-written signature of such person or entity.

All persons and entities, if any, for whom Defendants possess an electronic document or other electronic form (or authentic copy thereof) stating Defendants may use an ATDS to send advertising and/or telemarketing text messages to a specific cell phone number bearing the electronic signature of such person or entity.

All persons and entities, if any, for whom Defendants possess an agreement to arbitrate TCPA claims (or authentic copy thereof) bearing the hand-written or electronic signature of such person or entity.

Further, Plaintiff requests the Court to appoint Plaintiff Michael Seefeldt as class representative and to appoint Edward D. Robertson, III and Anthony L. DeWitt of Bartimus Frickleton Robertson Rader, PC and Ari N. Rodopoulos of the Wood Law Firm, LLC as lead class counsel.

## III.  STATEMENT OF THE FACTUAL ALLEGATIONS

Defendants are part of a large group of businesses known as The Cordish Companies, which are commonly owned, controlled, and/or operated.  (Doc. 1, ¶ 6).  The Cordish Companies, including Defendants, work together toward common business objectives, much like a single large

3

entity, and many even share the same directors, officers, employees, equipment, and/or office locations.  (*Id.* at ¶ 7).  The Cordish Companies attempt to separate and insulate various aspects of each business into separate entities, rather than a single entity, presumably for desired financial, tax, legal, liability, and other perceived business advantages.  (*Id.* at ¶ 8).

For example, Defendant Brew House is a bar and restaurant located within the Ballpark Village entertainment district in St. Louis, Missouri.  (Doc. 1, ¶ 9).  Brew House controls the day-to-day management of the restaurant, such as interacting with the public, serving food and drinks to customers, cleaning the tables and floors, *etc*. (*Id.*).

Defendant ECI, however, is a bar and restaurant management company that provides the corporate decision making for Defendant Brew House, Ballpark Village, as well as multiple other Cordish-controlled entities.  (Doc. 1, ¶ 10).  Defendant ECI controls, in whole or in part, corporate decisions for Defendant Brew House such as hiring and training, nationwide and local marketing, and creation and/or selection of hardware, software, web services, and other third-party services to be used by Defendant Brew House and other Cordish-controlled venues. (*Id.*at ¶ 11).

In other TCPA litigation, Brew House's general manager, Kellie Rush, testified there is a hierarchy of authority whereby ECI has broad command over the entire Ballpark Village, which includes venues such as Brew House, Fox Sports Midwest Live, and other businesses.  (Depo. of Kellie Rush, 24: 5-16, **Exhibit 1**).  For example, Ms. Rush testified Ashley St. Pierre is part of Brew House's marketing team, and Brew House "report[s] to the marketing team in Baltimore, which is where our corporate headquarters are."  (Depo. of Kellie Rush, 28: 16 – 30: 12, **Exhibit 1**).  In sworn interrogatory answers, Brew House has identified Ashley St. Pierre as the Director of Marketing at ECI in Baltimore, Maryland.  (*See* Defendant's Sixth Supplemental Interrogatory Answers, Doc. 119-2, Case No. 2:18-cv-04028-MDH, filed 10/16/2018, Irog. Answer No. 2,

**Exhibit 2**).  Brew House's sworn interrogatory answers also identify an unnamed ECI executive and two ECI employees as being responsible for, involved in, and/or knowledgeable about sending text messages to putative class members.  (*Id.*).

In order to market products and services, to increase revenue, to expand the customer base, and to pursue other marketing objectives, Defendants ECI and Brew House developed, acquired, licensed, and/or used custom, high-powered text-messaging programs ("Autodialer") that can select random, sequential, and/or stored phone numbers, dial such numbers, and send thousands of unsolicited automated text messages to such numbers.  (Doc. 1, ¶ 12).  Brew House's former general manager, Dana Biffar, admitted that Defendants' Autodialer can send as many as 2,082 text messages in 420 seconds.  (Depo. of Dana Biffar, 127: 4-7, **Exhibit 3**).  That is approximately five text messages per second, every second, for seven minutes continuously—*i.e.*, the exact type of annoying and harassing automated dialing that is illegal under TCPA (unless the telemarketer obtained prior express written and signed consent).  *See* 47 C.F.R. § 64.1200(a)(2) (use of autodialer to make call or text that introduces an advertisement or telemarketing is illegal unless the caller obtained prior express consent in writing).

Defendants ECI and Brew House also designed, developed, implemented, and supervised a comprehensive marketing scheme (the "Text Blast Scheme") whereby ECI and Cordish-controlled entities, including Defendant Brew House, compiled thousands of cell phone numbers and used the Autodialer to bombard the individuals having such cell phone numbers with special offers, prizes, events, and happy hours via unsolicited text message.  (Doc. 1, ¶ 13).  The purpose of the Text Blast Scheme was to offer happy hours at which patrons would be provided with happy hour drinks and food items and entertainment.  (Depo. of Dana Biffar, 115: 2 – 116: 4, **Exhibit 3**).

Brew House maintains a database of contacts that includes people's names, phone

numbers, email addresses, dates of birth, and other information.  (Depo. of Dana Biffar, 14: 12-15, **Exhibit 3**).  This database is used to send happy hour text messages and Brew House maintains text message logs showing the date, time, and content of each text message sent.  (*Id*. at 14: 16 – 15: 3).   The database includes an error code for a bad phone number or if the message failed for any reason.  (*Id*. at 15: 4-7).  The database also shows the name, email address, and phone number of each person who was sent a text message.  (*Id*. at 15: 12 – 16: 20).  Since March 2016, Defendants sent between 100,000 and 250,000 text messages.  (*See* Brew House's Supplemental RFA Answers, Nos. 23-24, **Exhibit 4**).

Defendants launched their Text Blast Scheme and began sending text messages without first training their employees and/or agents how to comply with the TCPA and/or the national-do-not call list.  (*See* Doc. 1, ¶ 17(c), 35, 81).  Steve Klingbeil, a former Brew House employee, testified he was never trained on compliance with the TCPA, he does not know if any TCPA written training materials exist or where they are located, and yet he nevertheless started sending happy hour text messages right away.  (Depo. of Steve Klingbeil, 32: 1 – 33: 10, **Exhibit 5**).

## IV.   ARGUMENT

### (A)   Class certification is appropriate for text-blasting claims under the TCPA.

Certification of a class lies within the sound discretion of the district court.  *Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski*, 678 F.3d 640, 645 (8th Cir. 2012); *Vallario v. Vandehey*, 554 F.3d 1259, 1264 (10th Cir. 2009).  In deciding a motion for class certification, the district court may look into the merits of the case "only so far as to determine whether, given the factual setting of the case, if the plaintiff's general allegations are true, common evidence could suffice to make out a prima facie case for the class."  *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005); *see also Shook v. Bd. of Cty. Commissioners of Cty. of El Paso*, 543 F.3d 597, 612

(10th Cir. 2008).

The purpose of a class action is to facilitate litigation when the number of persons having interest in the lawsuit is so great that it is impractical to join them all as parties.  *Cummings v. Connell*, 402 F.3d 936, 945 (9th Cir. 2005).  Class action certification is appropriate to enforce legislative policies especially where numerous individuals hold only relatively small claims that would otherwise not be pursued.  *See In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1127-1128, n. 33 (7th Cir.), *cert. denied* 444 U.S. 870 (1979) (class action is primarily a device to vindicate the rights of individual class members and is also a vehicle for furthering the substantive policies behind legislation); *see also Welmaker v. W.T. Grant Co.*, 365 F.Supp. 531, 553 (N.D. Ga. 1972) ("The traditional purpose of a class action is to generate incentive to litigate claims that would otherwise not be litigated because they are [monetarily] so small as to make it impractical to bring individual suits.").

Certifying these TCPA claims as a class action serves the purposes and underlying policies of Rule 23, as well as the TCPA.  Multiple state and federal courts have approved class certification in cases alleging violations of the TCPA.  *See e.g.*, *Karen S. Little, L.L.C. v. Drury Inns, Inc.,* 306 S.W.3d 577, 584 (Mo. App. E.D. 2010) ("Under the TCPA, class certification is not only not prohibited, many jurisdictions throughout the country have routinely allowed class certification[.]").  Attached as **Exhibit 6** to this memorandum is a non-exhaustive list of cases holding class certification to be appropriate under the TCPA in both text/phone call cases and fax cases.

**(B)** **This case establishes the Rule 23(a) prerequisites for class action certification.**

Rule 23 governs class certification.  It requires an action to meet the four prerequisites in Rule 23(a) and the requirements of at least one of the three subsections of Rule 23(b).  Rule 23(a) states:

    (a)    Prerequisites.  One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

        (1)    the class is so numerous that joinder of all members is impracticable,

        (2)    there are questions of law or fact common to the class,

        (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

        (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23 (a).

### (1)     The class is so numerous that joinder is impracticable.

"The numerosity requirement of Rule 23(a)(1) requires an inquiry into whether the class is 'so numerous that joinder of all members is impracticable.'" *Paxton v. Union Nat. Bank*, 688 F.2d 552, 559-560 (8th Cir. 1982) (quoting Rule 23(a)(1)).  "A motion for class certification does not require the exact number or identity of class members."  *Siding and Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 444 n. 4 (N.D. Ohio 2012).  Rather, "[t]he inquiry focuses on impracticability of joinder, not precise identity."  *Id*.  "Where the exact size of the class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and assume joinder is impracticable."  2 NEWBERG ON CLASS ACTIONS (3D ED. 1992), § 7.22.A.  Although no arbitrary rules regarding the necessary size of classes have been established, the Eighth Circuit has approved a class size of 20 members.  *Boyd v. Ozark Air Lines, Inc.*, 568 F.2d 50, 54 (8th Cir. 1977); *Ark. Educ. Ass'n v. Bd. Of Educ.*, 446 F.2d 763, 765 (8th Cir. 1971) (20 class members sufficient).

Here, the numerosity requirement is easily satisfied because the proposed class includes thousands of putative class members.  The precise number of putative class members, their names, phone numbers, and email address can be ascertained once the text logs and contacts database are produced in this litigation.  Joinder of thousands of putative class members is clearly not practical.

*See Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 608 (D. Kan. 2014) ("A class of at least 233 people is sufficiently large that joinder of all members is impracticable.").

### (2)     The class shares common questions of law and fact.

The commonality requirement of Rule 23(a)(2) is satisfied where there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). There need only be a single issue of law or fact common to the members of the class. *See Baby Neal v. Casey*, 43 F.3d 48, 56 (3rd Cir. 1994). "[T]he commonality requirement has been characterized as a 'low hurdle' easily surmounted." *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

In this case, there are numerous issues of law and fact common to all members of the class including, but not limited to, whether the TCPA is constitutional (*see* Docs. 14-16), whether Defendants used an autodialer to send text messages to the Plaintiff Class, and whether Defendants complied with 47 C.F.R. § 64.1200(d)(1)-(6) prior to sending any text messages. Further, the liability elements of Plaintiff's TCPA claim are common to all members within the proposed class definition. Thus, there is no question that this case satisfies the commonality prerequisite. *See In re Motor Fuel Temperature Sales Practices Litig.*, 292 F.R.D. 652, 668 (D. Kan. 2013) (commonality established because the liability elements of plaintiffs' claims bear out that the class allegedly suffered the same injury).

### (3)     The representative plaintiff's claims are typical of the class.

Rule 23(a)(3) requires "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23 (a)(3). "Typicality under Rule 23(a)(3) means that there are 'other members of the class who have the same or similar grievances as the plaintiff.'" *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (*quoting Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977), *cert. denied* 434 U.S. 856 (1977)).

The typicality element is "fairly easily met so long as other class members have claims similar to the named plaintiff." *Id.* (*quoting DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Id.*; *see also K.L. by Dixon v. Valdez*, 167 F.R.D. 688, 691 (D.N.M. 1996), *citing Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988).

Here, Plaintiff's claim arises out of the very same course of conduct as the claims of each member of the class: (1) Defendants' use of an autodialer to send advertising and/or telemarketing text messages without obtaining prior express consent in writing; and (2) Defendants' failure to comply with 47 C.F.R. § 64.1200(d)(1)-(6) prior to sending text messages. Additionally, Plaintiff's claim is based upon the same very same legal theory as could be asserted by each member of the class:  that Defendants' conduct violated the TCPA.  Accordingly, the typicality requirement is satisfied.

### (4)     The representative plaintiff will fairly and adequately protect the interests of the class.

Rule 23(a)(4) requires "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23 (a)(4).  The adequacy requirement "is satisfied if: (1) there is no antagonistic interests between the named plaintiff and the class members, and (2) the plaintiff's counsel are competent to conduct the litigation." *Linquist v. Bowen*, 633 F.Supp. 846, 859 (W.D. Mo. 1986), *citing Sperry Rand Corp. v. Larson*, 554 F.2d 868, 873-4 n. 17 (8th Cir. 1977)); *see also Blair v. Transam Trucking, Inc.*, No. 09-2443-EFM-KGG, 2015 WL 5006076, at *5 (D. Kan. Aug. 20, 2015).

Here, Plaintiff is a member of the proposed class he seeks to represent.  Further, there are no antagonistic interests between the named Plaintiff and the class members.  The named

Plaintiff's claims are identical to those of the rest of the class.  In fact, in pursuing this litigation, the named Plaintiff has put the interests of the class above his own interests by pursuing the case on behalf of the class, instead of seeking only his own damages.

Additionally, Plaintiff's counsel is competent to conduct this litigation.  Plaintiff has selected counsel that has experience in litigating complex class actions, as well as experience in the area of telecommunications law, including appearing before the Federal Communications Commission.  Other Federal courts and Missouri courts have recognized the ability of Plaintiff's counsel by appointing the firms as lead counsel in complex class actions and TCPA class actions. Counsel for Plaintiff has also done extensive work in identifying and investigating the potential claims of this action during the time this action has been pending and will continue to invest significant time, out-of-pocket expenses, and other resources to representing the class.

Because there are no antagonistic interests between the named Plaintiff and the class and because Plaintiff's counsel is competent to conduct the litigation, the requirements of Rule 23(a)(4) are satisfied.

**(C)** **The Rule 23(b) requirements are satisfied.**

In addition to the prerequisites of Rule 23(a), an action must also satisfy at least one of the three sub-parts of Rule 23(b) to be maintained as a class action.  Fed. R. Civ. P. 23(b).  This action satisfies Rule 23(b)(3), which states:

> (b)   A class action may be maintained if Rule 23(a) is satisfied and if:
>
> ***
>
> (3)   the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A)  the class members' interest in individually controlling the prosecution or defense of separate actions;

(B)  the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)  the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)  the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

### (1)   Questions of law or fact common to the class predominate.

"To satisfy the predominance requirement in Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (internal citations and quotations omitted). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 622–23 (1997). "It is not necessary that all of the elements of the claim entail questions of fact and law that are common to the class, nor that the answers to those common questions be dispositive." *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014). "Put differently, the predominance prong 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Id.*, *quoting* 2 William B. Rubenstein et al., NEWBERG ON CLASS ACTIONS § 4:49, at 195–96 (5th ed. 2012).

That a particular defense "may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Beattie*, 511 F.3d at 564; *see also Siding and Insulation Co.*, 279 F.R.D. at 446 ("[T]hat some recipients may

fall under the TCPA's [affirmative defenses], does not overcome the predominance of the common questions . . . . Even if [defendant] can ultimately prove a few [affirmative defenses], a common question is still 'at the heart of the litigation.'") (q*uoting Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007)).

Here, on Count I, the single predominate issue is whether Defendants violated the TCPA by using an autodialer to send text messages to the putative class; and this issue is common to all class members. If no autodialer was used, the class would lose Count I. On Count II, the single predominate issue is whether Defendants complied with 47 C.F.R. § 64.1200(d)(1)-(6) before sending any text messages, and this issue is likewise common to all class members. If Defendants complied, then the class would lose Count II. *See e.g.*, *Karen S. Little, L.L.C.,* 306 S.W.3d at 582-83 ("[T]he predominating issue is whether [defendant's] conduct violated the TCPA and this issue is common to all class members."). Moreover, the TCPA provides for statutory damages, resulting in identical damages for each member of the class. 47 U.S.C. § 227(b)(3)(B). The common operative facts are the significant aspect of the case and can be best resolved in a single adjudication. Thus, the first requirement of Rule 23(b)(3) is satisfied.

### (2)    Class action is the superior method of adjudication.

Rule 23(b)(3) further requires a class action be superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). "In balancing the relative merits of a class action versus alternative available methods of adjudicating the controversy, the trial court may consider: 'the inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually.'" *Dale v. DaimlerChrysler Corp.*, 204 S.W.3d 151, 181 (Mo. App. W.D. 2006) (*quoting  Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161, 1165 (7th Cir.1974)). As explained by the United States Supreme Court:

> The policy at the very core of a class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (*citing Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).  "[O]ne of the primary functions of the class suit is to provide a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group." *Brady v. LAC, Inc.*, 72 F.R.D. 22, 28 (S.D.N.Y. 1976).  The class action is especially preferred when a large number of small or medium sized claimants may be involved because "[i]n light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied." *In Re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 732 (N.D. Ill. 1977).

(a)     The interest of members of the class in individually controlling the prosecution of separate actions is minimal.

In this case, statutory damages under the TCPA are only $500 per violation.[2]  The TCPA does not contain a statutory provision allowing for a plaintiff to recover attorneys' fees from a defendant.  Litigation costs for an individual class member might exceed the maximum possible recovery, making litigation of individual cases uneconomical.  Given the extensive discovery needed in this case, including multiple depositions, litigation costs for an individual class member would likely exceed the maximum possible recovery, making litigation of individual cases uneconomical for all class members.  *See In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-MD-1840-KHV, 2015 WL 5010048, at *12 (D. Kan. Aug. 21, 2015) ("[I]n light of the

---

[2]     Such damages may be trebled if the defendant's actions were willful or knowing.  *See* 47 U.S.C. § 227(b)(3).

14

limited size of any potential financial recovery for any particular class member and the possibility of inconsistent results, a class action is a far superior method of resolving the claims compared to individual suits.").

The "most compelling rationale for finding superiority in a class action" is the case of a "negative value suit" where the stakes to each member are too slight to repay the cost of the suit. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 420 (5th Cir. 1998). "This factor is most relevant where each class member has suffered sizeable damages or has an emotional stake in the litigation . . . where the damages each plaintiff suffered are not that great, this factor weighs in favor of certifying a class action." *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 652 (C.D.Cal. 1996) (*citing In re Northern Dist. Cal., Dalkon Shield, Etc.*, 693 F.2d 847, 856 (9th Cir. 1982)).

This case does not present a situation where each class member has suffered sizeable damages or has an emotional stake in the litigation, such as in a personal injury case. Accordingly, the interest of class members in individually controlling their own litigation is minimal.

(b) <u>The extent and nature of litigation already commenced by members of the class supports certification.</u>

Plaintiff is aware of one other lawsuit pending against Brew House regarding text messages sent in violation of the TCPA. *See Beal*, Case No. 2:18-cv-4028. The *Beal* proposed putative class has some overlap with this case. *Beal* was filed on April 4, 2018 and has a proposed putative class period of February 13, 2014 through April 4, 2018. To date, no motion for class certification has been filed in the *Beal* case.

ECI is a defendant in several pending TCPA lawsuits, but none of them involve the same facts, circumstances, or putative class members as this action. Accordingly, there is not significant litigation already commenced by members of the class against Defendants based on the text messages at issue and this factor weighs in favor of certification as a class action.

(c)      It is desirable to concentrate the litigation in this forum.

Concentrating the claims of the class in this forum is desirable.  Brew House is located here.  Many of the key witnesses, documents, and things are located and/or available here. Many putative class members reside in the St. Louis area. There is an adequate Plaintiff and competent counsel willing to pursue the claims of the class within this forum, and there is no other pending action pursing the claims of the proposed class (except *Beal*, which has partial overlap of putative class members).

(d)      There are no unusual difficulties likely to be encountered in the management of the case.

There are no unusual difficulties likely to be encountered in the management of this case as a class action.  Courts have managed scores of class actions under the TCPA with no unusual difficulty. "[D]ismissals [of class actions] for management reasons, in view of the public interest involved in class actions, should be the exception rather than the rule."  *In re Bristol Bay, Alaska, Slamon Fishery Antitrust Litigation*, 78 F.R.D. 622, 628 (W.D. Wa. 1978) (internal citations and quotations omitted).

Any difficulty encountered in the management of this action as a class action is far outweighed by the difficulties that would be encountered by the joinder of thousands of separate suits.  This case presents no more difficulties to manage than other class action suits, including securities litigation and consumer fraud cases.  Accordingly, this factor weighs in favor of class certification.

Thus, because common questions of law and fact predominate in this action and a class action is the superior method of adjudicating the claims alleged in this case, the Rule 23(b)(3) requirements are satisfied.

**V.      CONCLUSION**

WHEREFORE, for the foregoing reasons, Plaintiff requests this Court to grant his Motion for Class Certification, to appoint Plaintiff Michael Seefeldt as class representative and Edward D. Robertson, III and Anthony L. DeWitt of Bartimus Frickleton Robertson Rader, PC and Ari N. Rodopoulos of the Wood Law Firm, LLC as lead class counsel, and any other relief the Court deems just and proper.

Dated: April 11, 2019                                   Respectfully submitted,

                                                        /s/ Anthony L. DeWitt
                                                        Anthony L. DeWitt MO41612
                                                        Bartimus Frickleton Robertson Rader, PC
                                                        109 B East High Street
                                                        Jefferson City, MO  65101
                                                        573-659-4454

                                                        Edward D. Robertson, III MO58801
                                                        Bartimus Frickleton Robertson Rader, PC
                                                        11150 Overbrook Road, Suite 200
                                                        Leawood, KS  66211
                                                        913-266-2300

                                                        Ari Rodopoulos MO58777
                                                        Wood Law Firm, LLC
                                                        1100 Main Street, Suite 1800
                                                        Kansas City, MO 64105
                                                        office: 816-559-7645

                                                        *Attorneys for Plaintiff and all others similarly situated*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of April, 2019, the foregoing document was filed with the clerk of the court using the court's CM/ECF system, which will serve notice on all parties of record.

Glenn T. Graham      ggraham@kelleydrye.com, docketing@kelleydrye.com

Jacqueline M. Sexton     jsexton@fwpclaw.com, lreinier@fwpclaw.com

Lauri A. Mazzuchetti     lmazzuchetti@kelleydrye.com

Whitney M Smith      wsmith@kelleydrye.com, docketing@kelleydrye.com

Zachary T. Bowles     zbowles@fwpclaw.com


By: /s/ Anthony L. DeWitt
Attorney for Plaintiff