**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| MICHAEL SEEFELDT, individually and | ) | |
| on behalf of all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-cv-00188-SNLJ |
| | ) | |
| ENTERTAINMENT CONSULTING | ) | |
| INTERNATIONAL, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**UNITED STATES OF AMERICA'S SUGGESTIONS IN SUPPORT
OF THE CONSTITUTIONALITY OF THE TELEPHONE
<u>CONSUMER PROTECTION ACT OF 1991</u>**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 2

ARGUMENT ......................................................................................................... 5

I.      The TCPA's Speaker-Based Distinctions Do Not Trigger Strict Scrutiny ............. 5

II.     The Autodialer Restriction Is A Content-Neutral Restriction On Speech .............. 7

      A.     Neither the FCC's Orders Nor The TCPA Provision Authorizing
              Those Orders Render the Autodialer Restriction Content Based ................ 7

      B.     The Government-Debt Exception Does Not Render the Statute
              Content Based ........................................................................................... 8

      C.     The Autodialer Restriction Comports With Well-Accepted
              Distinctions Between Government and Private Speech ............................. 10

III.    If The Court Finds The Autodialer Restriction Content Based, The Court
       Should Find That It Survives Strict Scrutiny ......................................................... 11

      A.     The Autodialer Restriction Furthers A Compelling Privacy Interest.......... 11

      B.     The Autodialer Restriction Is Narrowly Tailored And Not Under-
              Inclusive ................................................................................................. 13

      C.     If The Court Were To Hold The Government-Debt Exception
              Unconstitutional, The Proper Remedy Would Be Severance ................... 15

IV.    The Autodialer Restriction And The Do-Not-Call Authorizing Provisions
       Satisfy the Equal Protection Clause ...................................................................... 16

V.     The Autodialer Restriction Is Not Unconstitutionally Vague ............................... 16

i

# TABLE OF AUTHORIES

## CASES

*Am. Assoc. of Political Consultants, Inc. v. FCC*,
 923 F.3d 159 (4th Cir. 2019)................................................................................2, 8, 15

*Brickman v. Facebook, Inc.*,
 230 F. Supp. 3d 1036 (N.D. Cal. 2017) ............................................................7, 10, 14

*Campbell-Ewald Co. v. Gomez*,
 136 S. Ct. 663 (2016) ..................................................................................................10

*Carey v. Brown*,
 447 U.S. 455 (1980) ....................................................................................................11

*Carpenter v. United States*,
 138 S. Ct. 2206 (2018) ..................................................................................................2

*Duguid v. Facebook, Inc.*,
 926 F.3d 1146 (9th Cir. 2019)...............................................................................2, 6, 15

*Fraternal Order of Police, North Dakota State Lodge v. Stenehjem*,
 431 F.3d 591 (8th Cir. 2005).........................................................................................6

*Frisby v. Schultz*,
 487 U.S. 474 (1988) ....................................................................................................12

*Gallion v. United States*,
 ---F. App'x---, 2019 WL 2913970 (9th Cir. July 8, 2019) ............................................6

*Gallion v. Charter Commc'ns Inc.*,
 287 F. Supp. 3d 920 (C.D. Cal. 2018) ........................................................................11

*Grayned v. City of Rockford*,
 408 U.S. 104 (1972) ....................................................................................................17

*Greenley v. Laborers' Int'l Union of N. Am.*,
 271 F. Supp. 3d 1128 (D. Minn. 2017) ...............................................................7, 10, 11

*Gresham v. Rutledge*,
 198 F. Supp. 3d 965 (E.D. Ark. 2016) ..................................................................13, 14

*Gresham v. Swanson*,
 866 F.3d 853 (8th Cir. 2017), *cert denied*, 138 S. Ct. 682 (2018) ................................15

*In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
   18 F.C.C. Rcd. 14014 (July 3, 2003) .............................................................. 3

*INS v. Chadha*,
   462 U.S. 919 (1983) ..................................................................................... 15

*Kirkeby v. Furness*,
   92 F.3d 655 (8th Cir. 1996)................................................................... 11, 12

*Marks v. Crunch San Diego, LLC*,
   904 F.3d 1041 (9th Cir. 2018), *cert denied*, 139 S. Ct. 1289 (2019) ............ 16

*Mejia v. Time Warner Cable, Inc.*,
   2017 WL 3278926 (S.D.N.Y. Aug. 1, 2017) ................................................. 10

*Mey v. Venture Data, LLC*,
   245 F. Supp. 3d 771 (N.D.W. Va. 2017) ........................................................ 9

*Mims v. Arrow Fin. Servs., LLC*,
   565 U.S. 368 (2012) ....................................................................................... 2

*Moser v. FCC*,
   46 F.3d 970 (9th Cir. 1995)....................................................................... 8, 13

*Orin v. Barclay*,
   272 F.3d 1207 (9th Cir. 2001)...................................................................... 16

*Patriotic Veterans, Inc. v. Zoeller*,
   845 F.3d 303 (7th Cir. 2017), *cert denied*, 137 S. Ct. 2321 (2017) ................ 8

*Pleasant Grove City v. Summum*,
   555 U.S. 460 (2009) ..................................................................................... 11

*Powell v. Ryan*,
   855 F.3d 899 (8th Cir. 2017)........................................................................ 17

*Reed v. Town of Gilbert*,
   135 S. Ct. 2218 (2015) .......................................................................... 5, 6, 9

*Reno v. ACLU*,
   521 U.S. 844 (1997) ..................................................................................... 13

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
   515 U.S. 819 (1995) ....................................................................................... 8

*Rowan v. U.S. Post Office Dep't,*
   397 U.S. 728 (1970) ............................................................................................ 12

*Susinno v. Work Out World, Inc.,*
   862 F.3d 346 (3d Cir. 2017) ............................................................................... 17

*Turner Broad. Sys., Inc. v. FCC,*
   512 U.S. 622 (1994) .............................................................................................. 5

*Van Bergen v. Minnesota,*
   59 F.3d 1541 (8th Cir. 1995) ...................................................................... 8, 9, 17

*Veneklase v. City of Fargo,*
   248 F.3d 738 (8th Cir. 2001) ............................................................................. 12

*Ward v. Rock Against Racism,*
   491 U.S. 781 (1989) ......................................................................................... 6, 17

*Weed v. Jenkins,*
   873 F.3d 1023 (8th Cir. 2017) ..................................................................... 16, 18

*Woods v. Santander Consumer USA, Inc.,*
   Case No. 2:14-cv-02104-MHH, 2017 WL 1178003 (N.D. Ala. Mar. 30, 2017) ........... 15

**STATUTES**

28 U.S.C. § 2342 ........................................................................................................ 7

47 U.S.C. § 153 ........................................................................................................... 5

47 U.S.C. § 227 .................................................................................................*passim*

47 U.S.C. § 402 ........................................................................................................... 7

Bipartisan Budget Act of 2015,
   Pub. L. No. 114-74, 129 Stat. 584 ...................................................................... 3

**REGULATIONS**

47 C.F.R. § 64.1200 ................................................................................................... 4

## INTRODUCTION

Defendants Entertainment Consulting International, LLC and Outfield Brew House, LLC, d/b/a Budweiser Brew House (collectively "Defendants") have raised constitutional challenges to two provisions of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA").  First, Defendants challenge § 227(b)(1)(A)(iii) of the TCPA (the "autodialer restriction"), which prohibits the use of an automatic telephone dialing system ("ATDS") to make a call or send a text message to a cell phone user without the user's prior express consent, unless the call or message is initiated for an emergency purpose or to collect a debt owed to or guaranteed by the United States.  Defendants ask this Court to strike down the autodialer restriction because it allegedly (1) is a content-based regulation of speech that fails to survive strict scrutiny, (2) violates equal protection principles, and (3) is void for vagueness.

The Court should reject these arguments.  The autodialer restriction is content neutral and easily survives intermediate scrutiny.  But even if the autodialer restriction were content based, it would still survive strict scrutiny.  The autodialer restriction is narrowly tailored to protect a compelling privacy interest, prohibiting only the sorts of automated communications that Congress found most problematic – those made in the absence of consumer consent – and no more.  Defendants' vagueness challenge should also be rejected.  The autodialer restriction is composed entirely of words of common understanding and easily survives vagueness review.

Recently, two appellate courts held unconstitutional and severed a single statutory

1

exception to the TCPA, but otherwise reaffirmed the constitutionality of the remainder of the autodialer restriction.  *See Am. Assoc. of Political Consultants, Inc. v. FCC*, 923 F.3d 159 (4th Cir. 2019) (*AAPC*); *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019). Although those courts correctly held the provision severable, they erred in finding it unconstitutional.  For the reasons stated below, this Court should uphold the autodialer restriction in its entirety.[1]

Defendants' final argument is that the provisions of the TCPA that authorize regulations concerning a do-not-call registry are content based because they do not apply to non-profits.  This too should be rejected.  The authorizing provisions do not turn on the content of any speech.  Accordingly, the Court should reject Defendants' constitutional arguments.

## BACKGROUND

"Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA."  *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-71 (2012).  The ubiquity of cell phones only aggravates such problems.  "[I]ndividuals . . . compulsively carry cell phones with them all the time.  A cell phone faithfully follows its owner beyond public thoroughfares and into private residences[.]"  *Carpenter v. United States*, 138 S. Ct. 2206, 2218 (2018).  Two statutory sections are pertinent here.  First, the TCPA' autodialer restriction makes it unlawful:

_____

[1] The United States' petition for rehearing en banc in *AAPC* was denied, and the United States is determining whether to seek further review in that case and in *Duguid*.

to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any [ATDS] . . . to any telephone number assigned to a . . . cellular telephone service . . . unless such call is made solely to collect a debt owed to or guaranteed by the United States.

47 U.S.C. § 227(b)(1)(A)(iii).

Congress added the final clause in November 2015 as part of the Bipartisan Budget Act of 2015.  *See* Pub. L. No. 114-74, § 301, 129 Stat. 584, 588.  The provision has long been interpreted to apply to both phone calls and text messages.  *See In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 (July 3, 2003).

The TCPA also requires the FCC to prescribe regulations "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."  47 U.S.C. § 227(c)(1)-(2).  Exempted from those regulations are calls made by a "tax exempt nonprofit organization."  *Id.* § 227(a)(4)(C).  The FCC has implemented regulations pursuant to this authority, including a prohibition on making telephone solicitations to any number registered on the national do-not-call registry.  *See* 47 C.F.R. § 64.1200(c).  An individual who receives multiple calls within a year in violation of those regulations may sue, but the caller may raise a defense by demonstrating that it has implemented "reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations."[2]  47 U.S.C. § 227(c)(5).

---

[2] The private right of action for Section 227(c)(5) is different (and more stringent) than the private right of action for Plaintiff's other claim, brought under Section 227(b).  For example, an individual may sue under Section 227(b) after receiving a single, illegal call, and Section 227(b) does not allow the affirmative defense contained in Section 227(c)(5).

Plaintiff brings this putative class action seeking damages for alleged violations of both § 227(b)(1)(A)(iii) of the TCPA (the "ATDS claim") and 47 C.F.R. § 64.1200 (the "do-not-call claim").  Compl., ECF No. 1.  Plaintiff alleges that Defendants sent unsolicited text messages to his cell phone using an ATDS.  *Id.* ¶¶ 15, 29, 41.  Plaintiff further alleges that he never provided prior express consent to receive the text messages, that he was "registered on the national do-not-call list," and that "Defendants failed to establish written policies and procedures to ensure compliance with the national and/or internal do-not-call rules."  *Id.* ¶¶ 17, 35-37.

Defendants have moved to dismiss on constitutional grounds.  *See* Defs.' Mot. to Dismiss, ECF No. 15 ("Def. Mot.").  With respect to the ATDS claim, Defendants contend that the autodialer restriction is subject to strict scrutiny because it discriminates based on speaker and content, including by virtue of the recently added exception to the autodialer restriction for calls to collect a debt owed to or guaranteed by the United States (the "government-debt exception").  *Id.* at 6-7. Defendants contend that the autodialer restriction cannot survive strict scrutiny because the government's interest in promoting residential privacy is not compelling, and that even if it were, the autodialer restriction is not narrowly tailored.  *Id.* at 8-9. Defendants also argue that the autodialer restriction violates equal protection and is void for vagueness.  *Id.* at 10-11.  As to the do-not-call claim, Defendants contend that they cannot be liable because the statutory provisions authorizing the relevant regulations are content based and fail strict scrutiny.  *Id.* at 7-9.

---

*Compare* 47 U.S.C. § 227(b)(3), *with id.* § 227(c)(5).

4

On March 15, 2019, Defendants filed a Notice of Constitutional Question.  *See* ECF No. 16.  The United States acknowledged the constitutional question and requested additional time (until July 13, 2019) to determine whether to intervene.  *See* ECF No. 35. The Court granted that request, *see* ECF No. 36, and certified the constitutional question, *see* ECF No. 48.

## ARGUMENT

## I.     The TCPA's Speaker-Based Distinctions Do Not Trigger Strict Scrutiny

Defendants incorrectly assume that speech restrictions based on a speaker's identity are subject to strict scrutiny.  Proceeding from that assumption, Defendants contend that the autodialer restriction is subject to strict scrutiny because it only applies to "persons," and the TCPA does not define the United States as a "person," *see* 47 U.S.C. §§ 153(3), 227(b)(1); and similarly, that the TCPA's provisions authorizing the FCC to promulgate regulations related to the national do-not-call registry are subject to strict scrutiny because they exempt non-profits, *see id.* § 227(a)(4), (c)(1)-(2).  Def. Mot. at 7.

Defendants' underlying assumption is misguided.  Speaker-based distinctions, standing alone, do not automatically trigger strict scrutiny.  *See Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 657 (1994) ("To the extent appellants' argument rests on the view that all regulations distinguishing between speakers warrant strict scrutiny, it is mistaken." (citation omitted)).  Rather, speaker-based distinctions trigger strict scrutiny only when "the legislature's speaker preference reflects a content preference."  *Reed v.*

*Town of Gilbert*, 135 S. Ct. 2218, 2230 (2015) (quoting *Turner*, 512 U.S. at 658).  And a

law reflects a content preference only when it "applies to [a] particular speech because of

the topic discussed or the idea or message expressed."  *Id.* at 2227.  Neither provision

cited by Defendants evinces such a content preference:  the exemptions are based on *who*

is speaking (the government and non-profits), not on *what* the speaker proposes to say.

Because these provisions are facially content neutral, and because their differential

treatment may be "justified without reference to the content of the speech," *id.* at 2229

(quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)), the authorizing

provisions are not subject to strict scrutiny.

   The Eighth Circuit confirmed this conclusion in *Fraternal Order of Police, North

Dakota State Lodge v. Stenehjem*, 431 F.3d 591 (8th Cir. 2005).  In that case, the court

rejected the argument that the exemption of certain tax-exempt charities from North

Dakota's do-not-call registry's requirements rendered the statute content based, instead

holding that the non-profit exemption was content neutral and did not trigger strict

scrutiny.  *Id.* at 596.  *Stenehjem* thus squarely forecloses Defendants' challenge to the

TCPA provisions authorizing the do-not-call registry, which entirely depends on a

finding that the authorizing provisions were subject to strict scrutiny because of their

differential treatment of non-profits.  *See, e.g.*, *Duguid*, 926 F.3d at 1153 (the TCPA has

been "repeatedly affirmed" when considered under less than strict scrutiny).

Additionally, *Stenehjem*'s analysis confirms that the autodialer provision cannot be

subject to strict scrutiny solely because the autodialer provision does not apply to the

United States.  That conclusion is supported by the Ninth Circuit, which just this week

rejected the argument that "the delegation to the [FCC] and the claimed government

speakers' preference" rendered the TCPA unconstitutional.  *Gallion v. United States*, ---

F. App'x---, 2019 WL 2913970, at *1 (9th Cir. July 8, 2019) (mem.).

## II.     The Autodialer Restriction Is A Content-Neutral Restriction On Speech

Defendants also contend that the autodialer restriction is subject to strict scrutiny

because it allegedly contains various content-based exceptions.  Defendants are incorrect:

the autodialer restriction is content neutral and subject only to intermediate scrutiny.

### A.  Neither the FCC's Orders Nor The TCPA Provision Authorizing Those Orders   Render the Autodialer Restriction Content Based

In their opening brief, Defendants argue that FCC orders make the autodialer

provision content based, Def. Mot. at 2, but later disclaim reliance on those orders, *see*

Defs.' Reply Suggestions in Support of Mot. to Dismiss, ECF No. 30 ("Def. Reply"), at

8-9.  They do so for good reason:  this court is jurisdictionally barred from considering

them.  *See* 47 U.S.C. § 402(a); 28 U.S.C. § 2342(1); *Greenley v. Laborers' Int'l Union of*

*N. Am.*, 271 F. Supp. 3d 1128, 1149 (D. Minn. 2017) ("Because this Court lacks

jurisdiction to entertain a constitutional challenge as it pertains to FCC orders, the Court

does not consider those exceptions for the purpose of this analysis.").

Defendants nonetheless assert that the provisions of the TCPA authorizing these

regulations render the autodialer restriction content based.  Def. Reply at 8-9; *see* 47

U.S.C. § 227(b)(2)(B)(ii), (b)(2)(C).  But the potential for the FCC to issue content-based

regulations does not create a constitutional problem with the statute itself.  *See, e.g.,*

*Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036, 1045 (N.D. Cal. 2017) ("Although the statute empowers the FCC to create exceptions that promote the interest of privacy rights, there are content-neutral ways for the FCC to accomplish this . . . . The mere possibility that the FCC could create a content-based exception at some later time does not render this exception to be content-based itself."); *see also Moser v. FCC*, 46 F.3d 970, 973 (9th Cir. 1995) (the TCPA's language authorizing the FCC to promulgate exceptions to the autodialer restriction "is permissive, not mandatory," and it "in no way requires the FCC to adopt [content-based] exemptions").  Even assuming that the FCC's orders did create content-based exemptions that cannot withstand strict scrutiny, the proper remedy would be to strike down the regulations, not the autodialer provision.

### B.  The Government-Debt Exception Does Not Render the Statute Content Based

Defendants next contend that the autodialer restriction is content based because it does not apply to calls "made solely to collect a debt owed to or guaranteed by the United States."[3]  47 U.S.C. § 227(b)(1)(A)(iii).  In *Van Bergen v. Minnesota*, however, the Eighth Circuit made clear that an exemption like this one, which turns on the relationship between the caller and the called party, is not content based.  *See* 59 F.3d 1541, 1550 (8th

---

[3] To the extent Defendants also argue that the autodialer restriction's exemption for calls made for emergency purposes renders it unconstitutional, *see* Def. Mot. at 7, that argument fails.  *Cf. AAPC*, 923 F.3d at 169-70 (discussing emergency exception).  Nor is the government-debt exception a viewpoint-based restriction on speech.  *See* Def. Mot. at 6.  Viewpoint discrimination occurs when the application of the provision turns on "the specific motivating ideology or the opinion or perspective of the speaker."  *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).  The applicability of the autodialer restriction does not depend on such matters.

Cir. 1995); *accord Patriotic Veterans, Inc. v. Zoeller*, 845 F.3d 303, 304-05 (7th Cir.

2017), *cert. denied*, 137 S. Ct. 2321 (2017).  That decision controls this case.

In *Van Bergen*, the Eighth Circuit held that a Minnesota autodialer regulation was

not content based because its "central provision . . . applie[d] to all callers, with three

exceptions . . . based on relationship rather than content."  59 F.3d at 1550.  The same is

true of the government-debt exception.  Like the Minnesota statute, whether or not the

autodialer restriction applies turns not on the content of a call, but on the relationship

between two parties – namely, the relationship between the government and a debtor with

a past-due loan.  *See Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 792 (N.D.W. Va.

2017) (holding the government-debt exception is based on relationship, not content).

Indeed, a person could receive identical debt-collection calls that follow precisely the

same script – for example, "Your student loan from Citibank is past due; please make a

payment" – and the TCPA might treat the calls differently depending on the underlying

relationship between the government and the debtor receiving the call.  The fact that the

exception may treat identical calls differently underscores that the provision does not

principally depend on the content of the call.

Because its application does not turn solely on the content of the speech at issue,

the government-debt exception is unlike the provisions in *Reed*, which involved an

ordinance that exempted twenty-three categories of signs from a general permit

requirement and subjected them to different rules based on what they said.  135 S. Ct. at

2224-25.  The rules that "appl[ied] to any given sign thus depend[ed] *entirely* on the

9

communicative content of the sign," and the Court held the ordinance subject to strict scrutiny on that basis. *Id.* at 2227 (emphasis added). The autodialer restriction, by contrast, is a universally applicable restriction with a narrow, relationship-based exception. Because the government-debt exception is relationship based, the autodialer restriction is content neutral and is not subject to strict scrutiny.[4]

### C. The Autodialer Restriction Comports With Well-Accepted Distinctions Between Government and Private Speech

The government often subjects its own speech to different requirements than those applicable to private actors, and such provisions have never been thought to raise First Amendment concerns. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672-74 (2016) (discussing governmental immunity under the TCPA). The TCPA does not apply to the government itself, and the government-debt exception simply acts to protect those who are collecting debts that the government could undoubtedly collect in the same manner itself without running afoul of the First Amendment. *See Brickman*, 230 F. Supp. 3d at 1047 ("[T]he government-debt exception to the TCPA does not present a First Amendment problem because it merely carves out an exception for something the federal government is already entitled to do[.]"); *Mejia v. Time Warner Cable, Inc.*, 2017 WL 3278926, at *15 (S.D.N.Y. Aug. 1, 2017) ("[T]he absence of TCPA liability for government speakers is

---

[4] A district court within the Eighth Circuit has concluded that the government-debt exception renders the autodialer restriction content based, but that court still upheld the autodialer restriction (including the government-debt exception) under strict scrutiny. *See Greenley*, 271 F. Supp. 3d at 1149-51. For the reasons stated in this memorandum, the *Greenley* court erred in finding the autodialer restriction content based, but correctly concluded that it would survive strict scrutiny even if it were content based.

only a confirmation of the general principle of sovereign immunity.  To find otherwise would force Congress into an untenable Sophie's Choice between sovereign immunity and compliance with the First Amendment by requiring Congress to abrogate sovereign immunity every time it sought to restrict private speech[.]"); *see also Pleasant Grove City v. Summum*, 555 U.S. 460, 467-68 (2009) ("The Free Speech Clause . . . does not regulate government speech . . . . A government entity may exercise this same freedom to express its views when it receives assistance from private sources for the purpose of delivering a government-controlled message.").

## III.   If The Court Finds The Autodialer Restriction Content Based, The Court Should Find That It Survives Strict Scrutiny

### A.  The Autodialer Restriction Furthers A Compelling Privacy Interest

The Supreme Court has made clear that the interest "in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order."  *Carey v. Brown*, 447 U.S. 455, 471 (1980), and every court to have considered the issue has held that the TCPA promotes a compelling interest in personal and residential privacy.[5] Notwithstanding this unanimous precedent regarding the TCPA, Defendants cite *Kirkeby v. Furness* for the proposition that residential privacy is not a "compelling" interest.  *See* 92 F.3d 655, 659 (8th Cir. 1996).  The privacy interests at issue in *Kirkeby*, however, are wholly different from those protected by the autodialer restriction.  *Kirkeby* is thus

---

[5] *See, e.g.*, *Greenley*, 271 F. Supp. 3d at 1150 ("That [residential privacy] is a compelling interest is well-established in the Eighth Circuit and elsewhere."); *Gallion*, 287 F. Supp. 3d 920, 928 (C.D. Cal. 2018) (agreeing with "consensus view among district courts that the TCPA serves a compelling government interest in protecting residential privacy.").

inapplicable.

A critical distinction between *Kirkeby* and this case is the location of the offensive speech. *Kirkeby* concerned a First Amendment challenge to an anti-picketing ordinance that "restrict[ed] free expression on the public streets, 'the archetype of a traditional public forum.'" 92 F.3d at 662 (alteration and citation omitted). The speech in that case, undertaken in a traditional public forum, has nothing to do with the calls and text messages regulated by the TCPA, which intrude into the most personal and intimate of spaces, including our homes, hospitals, places of worship, and places of work.

That distinction is significant. The courts have never considered the privacy interests of people in public forums to be the same as the privacy interests in one's home, and for good reason. Remarking on "the unique nature of the home, the last citadel of the tired, the weary, and the sick," the Supreme Court has recognized the paramount importance of "[p]reserving the sanctity" of that space. *Frisby v. Schultz*, 487 U.S. 474, 484 (1988) (alteration in original; quotation marks omitted). "Although in many locations, we expect individuals simply to avoid speech they do not want to hear, the home is different"; an "important aspect of residential privacy is protection of the unwilling listener." *Id.* (citations omitted). The Court has thus "categorically reject[ed] the argument that a vendor has a right under the Constitution or otherwise to send unwanted material into the home of another. . . . The asserted right of a mailer, we repeat, stops at the outer boundary of every person's domain." *Rowan v. U.S. Post Office Dep't*, 397 U.S. 728, 738 (1970); *see also, e.g.*, *Frisby* 487 U.S. at 484-85 ("[A] special benefit

12

of the privacy all citizens enjoy within their own walls, which the State may legislate to protect, is an ability to avoid intrusions.  Thus, we have repeatedly held that individuals are not required to welcome unwanted speech into their own homes and that the government may protect this freedom."); *Veneklase v. City of Fargo*, 248 F.3d 738, 745 (8th Cir. 2001) (en banc, per curiam) (collecting cases).  Because *Kirkeby* did not involve unwanted communications crossing the threshold of the home, its statement regarding residential privacy has no bearing on the privacy equities protected by the TCPA and it presents no impediment to this Court joining the consensus that the TCPA advances a compelling interest.[6]

**B.  The Autodialer Restriction Is Narrowly Tailored And Not Under-Inclusive**

Although Defendants suggest that the autodialer restriction is not narrowly tailored and is under-inclusive, they fail to meaningfully argue *how* the autodialer restriction fails those tests.  Def. Mot. at 9-10.  Nor could they.  The autodialer restriction's prohibition on non-consensual autodialed calls is narrowly tailored because it restricts a limited method of communication – the use of certain technologies in placing calls – and only without the consent of the called party, making it closely drawn to the unwanted intrusions it aims to prevent.  The most Defendants do to argue that the TCPA fails narrow tailoring is to cite *Gresham v. Rutledge*, 198 F. Supp. 3d 965 (E.D. Ark. 2016),

---

[6] In fact, the autodialer restriction advances interests beyond residential privacy. Robocalls are highly unwelcome, *see Moser*, 46 F.3d at 972, and because of the ubiquity of cell phones, they cannot be avoided.  Robocalls not only follow individuals into their homes, but also to other private spaces such as hospitals, churches, and workplaces, among others, further distinguishing the speech protected by the autodialer restriction from the speech at issue in *Kirkeby*.

presumably for the proposition that the government could have used less restrictive alternatives.  But "less restrictive alternatives [must] be *at least as effective* in achieving the legitimate purpose that the statute was enacted to serve."  *Reno v. ACLU*, 521 U.S. 844, 874 (1997) (emphasis added).  Defendants do not explain how time-of-day restrictions would be as effective as the autodialer restriction, and other courts have rejected such alternatives, *see, Brickman*, 230 F. Supp. 3d at 1048 ("Time-of-day limitations would not achieve the same privacy objectives[.]").  Indeed, the facts of this case demonstrate the autodialer restriction's appropriate sweep:  should Defendants wish to contact prospective bar patrons, they may do so after obtaining the person's consent, or by contacting the person without using an autodialer.

Defendants' conclusory argument that the government-debt exception renders the autodialer restriction under-inclusive fails for similar reasons.  The government-debt exception, of course, is "limited by the fact that such calls would only be made to those who owe a debt to the federal government."  *Brickman*, 230 F. Supp. 3d at 1047.  Moreover, Defendants ignore the fact that the exception is cabined by the TCPA's express grant of authority to the FCC to "restrict or limit the number and duration of calls made . . . to collect a debt owed to or guaranteed by the United States."  *See* 47 U.S.C. § 227(b)(2)(H).  In short, the government-debt exception is a narrow carve-out from the autodialer restriction's otherwise sweeping prohibition, and Defendants advance no meaningful argument as to how the government-debt exception could render the

autodialer restriction under-inclusive.[7]

### C. If The Court Were To Hold The Government-Debt Exception Unconstitutional, The Proper Remedy Would Be Severance

If the Court were to hold the government-debt exception unconstitutional, the proper remedy would be to strike the exception itself – a 2015 amendment to a statute enacted in 1991 – not to invalidate the entirety of the autodialer restriction. *See, e.g.*, *INS v. Chadha*, 462 U.S. 919, 931-32 (1983) ("[T]he invalid portions of a statute are to be severed '[u]nless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not.'" (citation omitted)). "Here, there is no evidence that Congress would not have enacted the TCPA without the exception for government debt. To the contrary, Congress did enact the TCPA without the exception for government debt, and the version of the TCPA without the exception has been upheld as a valid time, place, or manner restriction by several courts throughout the country." *Woods v. Santander Consumer USA, Inc.*, Case No. 2:14-cv-02104-MHH, 2017 WL 1178003, at *3 n.6 (N.D. Ala. Mar. 30, 2017). Indeed, the two courts that have struck down the government-debt exception easily found it severable. *AAPC*, 923 F.3d at 171 ("[T]he explicit directives of the Supreme Court and Congress strongly support a severance of the debt-collection exemption[.]"); *Duguid*, 926 F.3d at 1156 ("[T]he debt-collection exception is severable from the TCPA."); *see also*

---

[7] Defendants again cite *Gresham*, which struck down a state TCPA analogue, but unlike the TCPA's autodialer restriction, the Arkansas statute was obviously under-inclusive in that it *only* applied to the sale of goods or services or political campaigns. *See* 198 F. Supp. 3d at 971-73.

*Gresham v. Swanson*, 866 F.3d 853, 855 (8th Cir. 2017), *cert. denied*, 138 S. Ct. 682 (2018) (severing content-based exception from otherwise valid autodialer restriction).

## IV. The Autodialer Restriction And The Do-Not-Call Authorizing Provisions Satisfy The Equal Protection Clause

Defendants cursorily argue that both the autodialer restriction and the TCPA's provisions authorizing the do-not-call registry violate equal protection principles. But Defendants concede that this argument entirely depends on the "same reasons" Defendants gave for their First Amendment argument. Def. Mot. at 10. Because Defendants' First Amendment arguments fail, so too does their Equal Protection argument. *See Orin v. Barclay*, 272 F.3d 1207, 1213 n.3 (9th Cir. 2001) (Equal Protection challenge was "subsumed by . . . First Amendment claim.").

## V. The Autodialer Restriction Is Not Unconstitutionally Vague

Defendants also assert that they cannot be liable under the autodialer restriction because the definition of an ATDS is unconstitutionally vague. Def. Mot. at 10-11. The TCPA defines an ATDS as follows:

> The term "automatic telephone dialing system" means equipment which has the capacity—
> (A)    to store or produce telephone numbers to be called, using a random or sequential number generator; and
> (B)    to dial such numbers.

47 U.S.C. § 227(a)(1).

Relying on a D.C. Circuit case that struck down an FCC order interpreting this definition, Defendants argue that the statutory definition is unconstitutionally vague in the absence of that order because it "fail[s] to give a person of ordinary intelligence

16

adequate notice of what" constitutes an ATDS.  Def. Mot. at 11; *see Weed v. Jenkins*, 873 F.3d 1023, 1030 (8th Cir. 2017).  However, even after the FCC's interpretive regulation was struck down, the Ninth Circuit had no trouble applying standard statutory interpretation techniques to arrive at a workable definition of an ATDS, underscoring that the definition is not vague.  *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1049-52 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1289 (2019).  Moreover, the TCPA was in effect for more than a decade after its passage without such a regulation, *see id.* at 1045, and it does not appear to have been seriously questioned on vagueness grounds during that time.

In any event, Eighth Circuit precedent squarely forecloses Defendants' vagueness challenge.[8]  In *Van Bergen*, the Eighth Circuit rejected a vagueness challenge to Minnesota's state analogue to the TCPA, which generally prohibited the use of "automatic dialing-announcing devices" ("ADADs"), defined as "a device that selects and dials telephone numbers and that, working alone or in conjunction with other equipment, disseminates a prerecorded or synthesized voice message to the telephone number called."  59 F.3d. at 1545 n.2.  The Eighth Circuit further explained that ADADs "can dial telephone numbers either according to a pattern (*e.g.*, consecutive or random numbers) or as programmed."  *Id.* at 1545.  In short, the Minnesota statute's definition of an ADAD was materially indistinguishable from the TCPA's definition of an ATDS.  *See*

---

[8] It appears that only one court of appeals has considered – and rejected – a vagueness challenge to the TCPA.  *See Susinno v. Work Out World, Inc.*, 862 F.3d 346, 349 n.1 (3d Cir. 2017) ("[W]e would not find the TCPA void for vagueness where, as here, it neither 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits,' nor 'authorizes or even encourages arbitrary and discriminatory enforcement.'").

*id.* at 1548 ("The Minnesota statute is 'virtually identical' to the TCPA[.]").

At bottom, Defendants' vagueness argument amounts to a complaint that the TCPA does not precisely identify all devices that qualify as an ATDS.  *See* Def. Mot. at 10-11.  But "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity."  *Powell v. Ryan*, 855 F.3d 899, 903 (8th Cir. 2017) (quoting *Ward*, 491 U.S. at 794); *see also Grayned v. City of Rockford*, 408 U.S. 104, 110 n.15 (1972) ("It will always be true that the fertile legal 'imagination can conjure up hypothetical cases in which the meaning of (disputed) terms will be in nice question.'").  So long as a statute uses "words of common understanding," as the TCPA does, the statute will pass constitutional muster.  *See Weed*, 873 F.3d at 1030.

DATED:  July 12, 2019.                       Respectfully submitted,

                                             JOSEPH H. HUNT
                                             Assistant Attorney General

                                             ERIC R. WOMACK
                                             Assistant Director, Federal Programs Branch

                                             */s/ Joshua C. Abbuhl*_____
                                             JOSHUA C. ABBUHL
                                             E.D. Mo. Bar No. 1044782DC
                                             Trial Attorney
                                             United States Department of Justice
                                             Civil Division, Federal Programs Branch
                                             1100 L St. NW
                                             Washington, D.C. 20005
                                             (202) 616-8366 (tel.)
                                             (202) 616-8470 (fax)
                                             Joshua.Abbuhl@usdoj.gov

18

*Counsel for the United States of America*

19