# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| MICHAEL SEEFELDT, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Case No. 4:19-cv-00188 |
| ENTERTAINMENT CONSULTING INTERNATIONAL, LLC, | ) ) ) | ORAL ARGUMENT REQUESTED |
| OUTFIELD BREW HOUSE, LLC d/b/a BUDWEISER BREW HOUSE, | ) ) ) | |
| Defendants. | ) ) ) | |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

W. James Foland #25022
Jacqueline M. Sexton #53262
Zach T. Bowles #70531
Foland, Wickens, Roper,
Hofer & Crawford, P.C.
1200 Main Street, Suite 2200
Kansas City, MO 64105
(816) 472-7474
jfoland@fwpclaw.com
jsexton@fwpclaw.com
zbowles@fwpclaw.com

Lauri A. Mazzuchetti (*pro hac vice*)
Geoffrey W. Castello (*pro hac vice*)
Whitney M. Smith (*pro hac vice*)
Glenn T. Graham (*pro hac vice*)
KELLEY DRYE & WARREN LLP
One Jefferson Road
Parsippany, New Jersey 07054
(973) 503-5900
lmazzuchetti@kelleydrye.com
gcastello@kelleydrye.com
wsmith@kelleydrye.com
ggraham@kelleydrye.com

*Attorneys for Defendants*
*Entertainment Consulting*
*International, LLC and Outfield Brew*
*House LLC d/b/a Budweiser Brew House*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................... 1

PROCEDURAL HISTORY AND FACTUAL BACKGROUND ...................................... 3

LEGAL STANDARD ................................................................................................. 9

ARGUMENT ............................................................................................................ 9

    I.      INDIVIDUALIZED ISSUES PREDOMINATE OVER COMMON QUESTIONS ............................................................... 9

          A.      Plaintiff's So-Called "Autodial" Class ............................................ 10

          B.      The Proposed Do Not Call "DNC" Class ....................................... 14

    II.     MANY PROPOSED CLASS MEMBERS LACK STANDING ............................................................................................... 17

    III.    PLAINTIFF FAILS TO SATISFY THE COMMONALITY, TYPICALITY AND ADEQUACY REQUIREMENTS ........................... 18

    IV.    PLAINTIFF FAILS TO SET FORTH A RELIABLE METHOD TO IDENTIFY CLASS MEMBERS ....................................... 20

CONCLUSION .......................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Balthazor v. Cent. Credit Servs., Inc.*,
    No. 10-62435-CIV, 2012 WL 6725872 (S.D. Fla. Dec. 27, 2012) ...................... 11, 18

*Blades v. Monsanto Co.*,
    400 F.3d 562 (8th Cir. 2005) ..................................................................... 11

*Braver v. Northstar Alarm Svs., LLC*,
    No. CIV-17-0383-F, 2019 WL 3208651 (W.D. Ok. Jul. 16, 2019) ........................... 15

*Burdge v. Ass'n Health Care Mgmt., Inc.*,
    No. 1:10-cv-00100, 2011 WL 379159 (S.D. Ohio Feb. 2, 2011) ............................... 15

*CE Design Ltd. v. King Architectural Metals, Inc.*,
    637 F.3d 721 (7th Cir. 2011) ..................................................................... 19

*Charvat v. NMP, LLC*,
    656 F.3d 440 (6th Cir. 2011) ..................................................................... 15

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ................................................................................. 9

*Cunningham v. Rapid Responses Mon. Servs., Inc.*,
    251 F. Supp. 3d 1187 (M.D. Tenn. 2017) .......................................................... 16, 17

*Elizabeth M. v. Montenez*,
    458 F.3d 779 (8th Cir. 2006) ..................................................................... 19

*Fober v. Mgmt. and Tech. Consultants, LLC*,
    886 F.3d 789 (9th Cir. 2018) ..................................................................... 10

*Gene & Gene LLC v. BioPay, LLC*,
    541 F.3d 318 (5th Cir. 2008) ..................................................................... 11

*Hall v. Nat'l Life Ins. Co.*,
    730 F. Supp. 2d 936 (E.D. Ark. 2010) ............................................................. 9

*Hartis v. Chicago Title Ins. Co.*,
    No. 08-CV-00607, 2010 WL 11545067 (W.D. Mo. Sept. 20, 2010) ........................... 9

*Hicks v. Sw. Energy Co.*,
    330 F.R.D. 183 (E.D. Ark. 2018)................................................................ 20

*Jovel v. Boiron, Inc.*,
    No. 11-cv-10803-SVW-SHx, 2014 WL 1027874 (C.D. Cal. Feb. 27,
    2014) ............................................................................................................ 20

*Lee v. Loandepot.com, LLC*,
    No. 14-CV-01084-EFM, 2016 WL 4382786 (D. Kan. Aug. 17, 2016) ............... 16, 17

*Legg v. PTZ Ins. Agency, Ltd.*,
    321 F.R.D. 572 (N.D. Ill. 2017).......................................................... 11, 18

*Lindsay Transmission, LLC v. Office Depot, Inc.*,
    No. 4:12-CV-221 (CEJ), 2013 WL 275568 (E.D. Mo. Jan. 24, 2013)................. 11, 16

*Mayo v. USB Real Estate Sec., Inc.*,
    No. 08-00568-CV, 2012 WL 4361571 (W.D. Mo. Sept. 21, 2012) ........................... 18

*In re Milk Prods. Antitrust Litig.*,
    195 F.3d 430 (8th Cir. 1999) ...................................................................... 19

*Perras v. H&R Block*,
    789 F.3d 914 (8th Cir. 2015) ...................................................................... 11

*Powers v. Credit Mgmt. Servs., Inc.*,
    776 F.3d 567 (8th Cir. 2015) ...................................................................... 19

*Revitch v. Citibank, N.A.*,
    2019 WL 1903247 (N.D. Cal. Apr. 28, 2019) ........................................... 11

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ...................................................................... 17, 18

*Ung v. Universal Acceptance Corp.*,
    319 F.R.D. 537 (D. Minn. 2017).......................................... 10, 11, 12, 13

*Versteeg v. Bennett, Deloney & Noyes, P.C.*,
    271 F.R.D. 668 (D. Wyo. 2011) ................................................................ 11

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .................................................................................... 9

*Worsham v. Travel Options, Inc.*,
    No. 14-2749, 2016 WL 4592373 (D. Md. Sept. 1, 2016)........................... 15

*Zemel v. CSC Holdings LLC*,
    No. CV 18-2340-BRM-DEA, 2018 WL 6242484 (D.N.J. Nov. 29,
    2018) ...................................................................................................... 14

*In re Zurn Pex Plumbing Prod. Liab. Litig.*,
    644 F.3d 604 (8th Cir. 2011) ............................................................... 17

**Statutes**

47 U.S.C. § 227(a)(4) ................................................................................ 15

47 U.S.C. § 227(b)(1)(A)(iii) .................................................................... 10

47 U.S.C. § 227(c) ........................................................................ 14, 15, 16

**Other Authorities**

47 C.F.R. § 64.1200(a)(1) ......................................................................... 10

47 C.F.R. § 64.1200(a)(2) ......................................................................... 10

47 C.F.R. § 64.1200(d) ................................................................ 14, 15, 16, 18

47 C.F.R. § 64.1200(f)(5) .......................................................................... 16

47 C.F.R. § 64.1200(f)(14) ........................................................................ 15

Fed. R. Civ. P. 23 ............................................................................... *passim*

*In re Matter of Rules and Regulations Implementing the Telephone
    Consumer Protection Act of 1991*,
    18 FCC Rcd. 14014 (2003) ................................................................... 14

Defendants Outfield Brew House, LLC (d/b/a Brew House) ("Brew House") and Entertainment Consulting International, LLC ("ECI") (collectively, "Defendants"), by and through their counsel, hereby submit the following suggestions in opposition to Plaintiff's motion for class certification ("Motion" or "Mot.") pursuant to Fed. R. Civ. P. 23.

## INTRODUCTION

This is not a case about unsolicited or nuisance text messages. Plaintiff's Telephone Consumer Protection Act ("TCPA") claims, rather, arise out of text messages that customers agreed to receive when they participated in Brew House's "Happy Hour Program" (the "Program"). Plaintiff seeks to expose Brew House to class-wide, annihilating damages, in excess of $50,000,000. But the putative classes would include thousands of customers who voluntarily communicated with Brew House by text message, including persons who planned by text message more than 6,300 happy hour parties.

The Program offered Brew House customers the chance to win a happy hour party by completing a contest entry card or electronic form available at Brew House or online. Each version contained TCPA-compliant disclosures and consent language that enabled Brew House to legally send text messages and/or place calls relating to the Program should it use an "automatic telephone dialing system" ("ATDS").[1] Brew House's records show that Plaintiff, a repeat customer at Brew House, completed and signed a contest entry form while dining at Brew House in May 2015. The entry form accurately included Plaintiff's birthdate, cell phone number and favorite beer. Plaintiff responded to a text from Brew

---

[1] Brew House never used an ATDS; rather, Brew House employees manually sent and exchanged text messages with customers. (Declaration of Dana Biffar ("DB Decl.") ¶ 44.)

House that he wanted to host the happy hour he won the very next day. Plaintiff's conduct was consistent with his voluntary submission of the contest entry form, and that he had agreed and expected to receive text messages from Brew House. It appears that, at some point in 2018, Plaintiff learned from his college friend Lindsey Wood, a lawyer at the Wood Law firm, that her firm was pursuing a TCPA class action against Brew House. Contrary to Brew House's records and Plaintiff's own prior conduct, Plaintiff now claims that he never completed the contest entry form, never provided Brew House his cellular phone number, and never agreed to receive text messages. Of course, if Plaintiff had admitted that he had consented, he would have no TCPA claim and his friend's law firm would be unable to pursue this lawyer-driven TCPA class action.

Courts around the country have consistently refused to grant class certification in cases, like this one, alleging violations of the TCPA where evidence demonstrates that putative class members consented to receive the very text messages they complain about. Plaintiff also ignores a number of other key issues that require individualized inquiries and therefore preclude class certification. Instead, Plaintiff conclusorily states that TCPA class actions are "routinely certified," hoping that this court will not conduct the rigorous analysis that is mandated under Rule 23.

The Court should also deny Plaintiff's Motion because of the highly unusual circumstances of this case, which was filed because of a falling out between two lawyers who were formerly co-counsel in a nearly identical class action pending in the Western District of Missouri, *Beal v. Outfield Brew House LLC*, No. 2:18-cv-04028 (W.D. Mo.). The instant Motion—filed before Defendants even answered the Complaint and before

Plaintiff has taken any discovery, and relying on discovery materials misappropriated from the *Beal* case—was the result of Plaintiff's counsel's effort to race against the *Beal* case, not the best interests of the class.

In sum, Plaintiff's Motion should be denied because: (i) individualized issues predominate over potential common questions; (ii) Plaintiff cannot satisfy the commonality, typicality or adequacy requirements of Rule 23; (iii) the proposed classes improperly include persons who lack standing; and (iv) Plaintiff fails to satisfy the ascertainability requirement.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

*Procedural History.* Up until a month before the filing of this case, Plaintiff's counsel, Aristotle Rodopoulos, was lead plaintiff's counsel in a nearly identical class action pending in the Western District of Missouri, the *Beal v. Outfield Brew House*. (*See* Decl. of Lauri Mazzuchetti ("LM Decl.") Ex. A.) On January 3, 2019, Judge Harpool granted Mr. Rodopoulos's request to withdraw as counsel in *Beal* (*id.* Ex. A at Dkt. No. 137), which both Mr. Rodopoulos and Mr. Kenney—Mr. Rodopoulos' former co-counsel—said was the result of a falling out between them (*id.* ¶ 11). As Mr. Rodopoulos was well aware, the plaintiff's class certification motion in *Beal* was due on April 11, 2019.[2] (*See id.* Ex. A at Dkt. No. 141.) In an obvious attempt to race ahead of his former co-counsel, on April 11, 2019, Mr. Rodopoulos took the unusual step of filing a class certification motion in a

---

[2] Mr. Rodopoulos filed Plaintiff's class certification motion in this case on April 11, 2019; stating that "[t]o date, no motion for class certification has been filed in the Beal case." (Mot. 15.) A motion for certification was filed later that day in the *Beal* case, as was required under the scheduling order that was entered in the action and available on the public docket.

newly-filed case. (*See* Mot.) He also sought to be designated as lead class counsel and asked that Plaintiff be appointed class representative. He did this ***before*** Defendants even answered the Complaint, ***before*** any discovery conference occurred, and ***before*** Plaintiff took any discovery. (*See, e.g.*, Dkt. No. 38.) Mr. Rodopoulos used the discovery materials appropriated from the *Beal* case to support class certification in this case, without his former client's permission, and acting against his former client's interests. (LM. Decl. Ex. C 80:15-18, 160:3-6, 178:15-179:6, 181:12-184:1.) *Beal* has been vigorously litigated for well over a year.[3] Presently pending before the Court in *Beal* are several fully briefed motions, including plaintiff's class certification motion and Brew House's summary judgment motion. (LM Decl. Ex. A at Dkt. Nos. 173-74, 183-86, 192-93, 201-07, 220-21.)

Brew House has expressed concerns to Mr. Rodopoulos about whether he is using confidential discovery materials in this case that were produced in *Beal* in violation of a protective order. (LM Decl. ¶ 8, Ex. F.) That protective order provides that confidential discovery material cannot be used "for any purpose whatsoever other than in [the *Beal*] litigation." (LM Decl. Ex. B.) Plaintiff's Motion relies on case materials misappropriated from the *Beal* case. (Mot. Exs. 1-5.) Brew House's concerns were heightened after Mr. Kenney advised that Plaintiff in the instant case was, as of November 2018, going to be added as a Plaintiff in the *Beal* case. (LM Decl. ¶ 10.) At his deposition, Plaintiff testified that he was not the person who was going to be added to *Beal*. (LM Decl. Ex. C 166:3-

---

[3] The parties have spent significant resources in *Beal* completing intensive fact and expert discovery, producing voluminous records, conducting numerous depositions in multiple states and appearing for multiple court hearings. The Court and a special discovery master, too, have expended significant efforts in *Beal*. (*See generally* LM Decl. Ex. A.)

23.) This is significant because at a November 13, 2018 hearing before Judge Harpool, after plaintiff Beal had to withdraw his Do-Not-Call claim because he did not receive more than one call in a 12-month period—a required element of that claim—Mr. Rodopoulos represented that he was "going to add [a new named plaintiff] who undisputedly has received multiple messages within a 12-month [period] for those second types of claims." (*Id.* 31:18-20.) In response to Judge Harpool's inquiry, Mr. Rodopoulos stated that he had a specific person in mind to add as a named plaintiff. (*Id.* 32:4-8.) When Judge Harpool pointed out that that the time for amending pleadings had passed, Mr. Rodopoulos maintained that he should be permitted to amend out of time because he could not amend prior to reviewing Brew House's text logs, which were designated as confidential under the Protective Order in *Beal*. (*Id.* 31:21-32:6.) The *Beal* complaint was never amended.[4]

***Brew House's Happy Hour Program.*** Brew House is a restaurant and bar at Busch Stadium in St. Louis, Missouri.[5] (Declaration of Dana Biffar ("DB Decl.") ¶ 4.) Brew House's Happy Hour Program, the details of and records related to which are set forth in detail in the Biffar Declaration (*id.* ¶¶ 4-46), offered customers the chance to win happy hour events at Brew House. Winners of the contests (the happy hour hosts) were provided the opportunity for a certain amount of free food and drinks and other perks during a planned happy hour event. (*Id.* ¶ 7.)

---

[4] Brew House intends to raise this issue with Judge Harpool, and will apprise this Court of any rulings on this topic.

[5] ECI is a separate entity that provides certain marketing and customer service-related support for more than fifty restaurants, bars, and nightclubs, including Brew House.

Over the course of the class period,[6] customers could complete a form to participate in the Program through a variety of ways, which changed over time. (*Id.* ¶ 11.) Customers could complete paper or electronic entry forms at Brew House, or online. (*Id.* ¶¶ 11, 29-30.) In each instance, and although the forms changed over time, the customers agreed and acknowledged in writing that they would receive text messages regarding the Program. (*Id.* ¶¶ 21-23, 28-32.) Because of that consent, Brew House would then communicate with contest winners by text message to inform them that they had won, and to plan the happy hour event. (*Id.* ¶¶ 11, 35, 43-45.) All of the various forms, including each version of the Paper Cards, contained TCPA-compliant disclosure and consent language in close proximity to where a customer provided the requested contact information. (*Id.* ¶¶ 21-23, 28-32.) The Paper Cards also included a place for customers to sign indicating that they agreed to receive text messages. (*Id.* ¶¶ 21-23.) Brew House recorded and maintained records that detailed (i) customers who completed and signed a Paper Card, (ii) the information they provided on the Paper Card,[7] (iii) the area in Brew House where the Paper Card was collected, and (iv) the approximate date when the Paper Card was submitted.[8] (DB Decl. ¶¶ 24-28; Decl. of Hannah Friedenbach ("HF Decl.") ¶ 5.) Brew House obtained contact information ***only*** directly from its customers. (DB Decl. ¶ 36.)

---

[6] The "class period" refers to the period between February 7, 2015 and February 7, 2019, which Plaintiff uses to define the putative classes in the Motion. (Mot. 2-3.)

[7] TCPA-compliant disclosure language also appeared in both the online and electronic entry forms, and Brew House similarly maintained records of customers who completed them. (DB Decl. ¶¶ 29-32.)

[8] For consumer privacy and other reasons, Brew House did not maintain the Paper Cards themselves, but rather maintained detailed records of the completed Paper Cards that were submitted. (DB Decl. ¶¶ 24-27.)

Brew House never required any customer to participate in these contests; rather, participation was voluntary.  (*Id.* ¶ 17.)  Many Brew House customers hosted multiple happy hours, and repeatedly entered to win.  (*Id.* ¶¶ 10, 40-41, 67.)  Contest entrants utilized the happy hours for both social and business purposes.  (*Id.* ¶ 9.)  Indeed, a significant number of the happy hours held were by local businesses treating their employees or business associates.  (*Id.* ¶¶ 9, 33, 41, 67.)

***Brew House's Customers Understood and Enjoyed the Happy Hour Program.***
The Happy Hour Program has been extraordinarily popular with Brew House's customers. Between February 2015 and February 2019, Brew House held thousands of happy hours and other parties as a result of these contests.  (*Id.* ¶ 8.)  In the 2016-2017 timeframe alone, Brew House hosted more than 6,300 happy hours for customers with tens of thousands of guests in attendance.  (*Id.*)  That customers understood that they were providing their phone numbers to receive text messages about the Program is reflected by the thousands of positive responses to Brew House's messages.  (*Id.* ¶¶ 52, 70.)  Brew House's employees also regularly spoke with Brew House's customers, and confirmed that they understood that text messages would be sent to announce winners.  (*Id.* ¶ 39; HF Decl. ¶ 8.)

***Plaintiff Consented to Receive Text Messages from Brew House.***  Plaintiff freely admits that he has been a long-time and repeat customer of Brew House.  (LM Decl. Ex. E at No. 2; *id.* Ex. C 46:5-25.)  Brew House records reflect that Plaintiff submitted a Paper Card in May 2015 and consented to be contacted by text.  (DB Decl. ¶¶ 47-50, Ex. A; HF Decl. ¶ 9-10.)  Brew House's May 2015 records reflect that during Plaintiff's May 2015 visit, he submitted a Paper Card to a server, which provided his name, date of birth, cell

phone number, and favorite beer. (*Id.*) Plaintiff admits that the information on the card was all correct. (*Id.* 95:11-96:3.) In May 2015, shortly after Plaintiff voluntarily provided this information, Brew House sent Plaintiff a text message advising that "your name has been chosen as today's recipient!" (DB Decl. ¶ 51; Dkt. No. 30-1.) That text message also advised Plaintiff to "[t]ext 'BUD' for details." (*Id.*) Approximately one minute later, Plaintiff responded positively with the keyword "BUD" to claim his happy hour. (*Id.*) Plaintiff also eagerly responded "Would tomorrow work??" and then engaged in a back-and-forth text message conversation to schedule his happy hour. (*Id.*) Like so many other customers, Plaintiff responded positively to Brew House's messages *multiple times*, seeking information on how and when he could enjoy the happy hour event. (DB Decl. ¶¶ 13, 15, 51; HF Decl. ¶ 14.)

**Plaintiff is Unaware of His Claims.** While Plaintiff admits that he has been to Brew House "several times in the last several years," he cannot recall any details about his visits. (LM Decl. Ex. E at No. 2; *id.* Ex. C 46:5-25, 94:3-96:8.). During his deposition, Plaintiff refused to identify which text messages he was seeking to recover for or otherwise provide basic factual details of the claims alleged in his Complaint. (*Id.* 68:15-25, 73:6-78:6, 112:8-119:19, 131:19-133:25.) Plaintiff refused to answer basic questions concerning his obligations as a proposed class representative, including whether he was seeking to represent persons other than himself. (*Id.* 75:15-76:24.) Plaintiff is unaware of his claimed "harm." (*Id.* 154:20-23.) Plaintiff was not aware this Motion was filed based upon the use of discovery in the *Beal* case. (*Id.* 80:15-18, 160:3-6, 178:15-179:6, 181:12-184:1.)

## LEGAL STANDARD

The class action device is an exception to the general rule that litigation must be prosecuted by the individual named parties only. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). "A party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23." *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). In addition to the requirements of Rule 23(a), Plaintiff must demonstrate that (i) common questions predominate, (ii) a class action is superior, and (iii) that a class is ascertainable. "Rule 23 does not set forth a mere pleading standard." *Dukes*, 564 U.S. at 350. The Court must engage in a "rigorous analysis," which frequently requires evaluation of "the merits of the plaintiff's underlying claim," before finding that the certification prerequisites have been satisfied. *Id.* at 351. Plaintiff "bears the burden of advancing a prima facie showing that the class action requirements of [Rule 23] are satisfied or that discovery is likely to produce substantiation of the class allegations." *Hall v. Nat'l Life Ins. Co.*, 730 F. Supp. 2d 936, 941 (E.D. Ark. 2010) (alteration in original) (quotation omitted). Plaintiff has not and cannot satisfy his burden.

## ARGUMENT

### I.       INDIVIDUALIZED ISSUES PREDOMINATE OVER COMMON QUESTIONS

"Rule 23(b)(3) requires that common questions predominate over individual questions. Thus, simply showing that common questions of law or fact exist under Rule 23(a)(2) is insufficient to satisfy Rule 23(b)(3)'s predominance requirement." *Hartis v. Chicago Title Ins. Co.*, No. 08-CV-00607, 2010 WL 11545067, at *3 (W.D. Mo. Sept. 20,

2010) (citation omitted).

## A. Plaintiff's So-Called "Autodial" Class

Count I of Plaintiff's Complaint seeks to certify an "Autodial" Class. Plaintiff claims that Defendants violated Section 227(b)(1)(A)(iii) of the TCPA by making non-emergency calls (sending text messages) using an ATDS, without the "prior express consent" of the called party. To prove this claim, Plaintiff must establish: (1) the defendant called a cellular telephone number; (2) using an ATDS; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii). The third element depends on the content of the message. If the text message "includes or introduces an advertisement or constitutes telemarketing," the sender is required to obtain "prior express *written* consent" of the recipient. 47 C.F.R. §§ 64.1200(a)(1) and (2) (emphasis added).[9] If the text does not constitute advertising, only the provision of one's phone number is required, so long as the call is "relate[d] to the reason why the called party provided his or her phone number."[10] *Fober v. Mgmt. and Tech. Consultants, LLC*, 886 F.3d 789, 793 (9th Cir. 2018). Thus, there is no liability under the TCPA, even if Brew House used an ATDS (which it did not) to send an advertising text message, where a recipient provided the requisite level of consent to receive the text message at issue. 47 C.F.R. § 64.1200(a)(2).

*Consent.* The Eighth Circuit has held that where evidence necessary to adjudicate

---

[9] Footnote 1 of Plaintiff's Motion (Mot. 1-2) misstates the law. "Prior express consent" must only be in writing for telemarketing calls to cell phones made using an ATDS. Consent need not be in writing for commercial calls that do not fall within the category of telemarketing. *See Ung*, 319 F.R.D. at 539 (holding that prior express consent can be provided orally) (*citing Osario v. State Farm Bank*, F.S.B., 746 F. 3d 1242, 1255 (11th Cir. 2014)).

[10] Plaintiff alleges that neither he nor absent class members provided consent in writing "or otherwise." (Compl. ¶ 72.)

a claim "varies from [class] member to [class] member, then it is an individual question," and class certification should be denied. *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005); *see also Perras v. H&R Block*, 789 F.3d 914, 916 (8th Cir. 2015). Courts have uniformly denied class certification in TCPA cases when confronted with individualized questions about consent. *See, e.g.*, *Ung v. Universal Acceptance Corp.*, 319 F.R.D. 537, 539-41 (D. Minn. 2017); *Lindsay Transmission, LLC v. Office Depot, Inc.*, No. 4:12-CV-221 (CEJ), 2013 WL 275568, at *4-5 (E.D. Mo. Jan. 24, 2013) (striking class allegations because individualized issues regarding consent made class treatment inappropriate); *Gene & Gene LLC v. BioPay, LLC*, 541 F.3d 318, 326-29 (5th Cir. 2008) (reversing class certification because individualized issue of consent in TCPA case could not be established via class-wide proof, and thus plaintiff's proposed class did not satisfy the predominance requirement); *Legg v. PTZ Ins. Agency, Ltd.*, 321 F.R.D. 572, 577 (N.D. Ill. 2017).[11]

Here, the following evidence, even regarding Plaintiff's own claim, demonstrates that individualized issues pertaining to "prior express written consent" predominate:

- Brew House's records show that, in May 2015, Plaintiff completed a Paper Card agreeing to TCPA-compliant disclosure and consent language;
- Plaintiff admits his personal information on the Paper Card is accurate;
- Brew House's records show that Plaintiff submitted the Paper Card on the first level dining area, where Plaintiff admitted he dined with his children on several occasions, including in 2015;
- That Plaintiff completed the Paper Card is corroborated by the fact that when he received a text message advising him that he had won the happy hour

---

[11] *See also, e.g.*, *Revitch v. Citibank, N.A.*, 2019 WL 1903247, at *4 (N.D. Cal. Apr. 28, 2019) (denying class certification in TCPA case where "consent issue will devolve into individualized inquiries which would overwhelm the trial"); *Balthazor v. Cent. Credit Servs., Inc.*, No. 10-62435-CIV, 2012 WL 6725872 at *4 (S.D. Fla. Dec. 27, 2012) ("Resolution of each putative class member's TCPA claim would necessarily involve an individual assessment of whether each class member consented to receive telephone calls on their cellular telephone"); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011).

party contest he had entered, he responded and asked if he could host the happy hour the next day;

- Plaintiff engaged in a back-and-forth text message exchange with a Brew House employee to plan the happy hour he had won;
- Plaintiff disputes that he completed a Paper Card, or ever provided his cellular telephone number to Brew House; there is no other logical source, however, from which Brew House could have obtained Plaintiffs' information (it only obtained information from customers themselves; it did not purchases lists); and
- Other putative class members may freely admit that they completed the Paper Card, or other entry form, and provided their prior express consent in writing.

Even if there was no dispute as to whether Plaintiff completed the Paper Card and provided consent, there would remain individualized issues as to whether the absent class members provided prior express written consent. There were a variety of different ways that Brew House customers could enter to win happy hours, including through completing various versions of the Paper Cards and various electronic entry forms. Thousands of text recipients held happy hours that they sought and won, after having consensual, individualized text message exchanges with Brew House employees. Given the overwhelmingly positive response to the Program and the text messages notifying customers that they had won, it is unlikely that many text recipients would, like Plaintiff, dispute that they entered to win the contest or that they consented to receive text messages. Indeed, as one District Court in this Circuit recently opined, "the best place to find proof of consent may rest with the [persons called] themselves.'" *Ung*, 319 F.R.D. at 541 (alteration in original). But even to the extent that a text recipient did not recall, or disputed, that they had completed an entry form, Brew House's records, as well as the credit card transaction records, can corroborate that such consent was provided and that the customer

was at Brew House at the time the contest entry was submitted.

Recognizing that no class member can prevail where the evidence demonstrates that they provided "prior express written consent," Plaintiff proposes to exclude from the class "all persons and entities, if any, for whom Defendants possess" certain, precise types of records. (Mot. 3.)[12] But in order to identify these persons, the Court would have to engage in individualized mini-trials as to whether the records meet Plaintiff's proposed requirements. And, even where the precise types of records Plaintiff identified cannot be produced, the same individualized questions remain. Indeed, no court has held—and Plaintiff cites to no authority—that the only acceptable evidence of prior express written consent are the types of records Plaintiff includes in his exclusions.

The *Ung* court rejected the argument that excluding class members who provided consent from the class could somehow render the remaining persons capable of meeting the predominance requirement:

> But this argument simply proves [defendant's] point. In order for the Court to determine whether a putative class member truly belongs in, or should be excluded from, the proposed class, it would have to consider evidence as to that individual's consent to be called (or lack thereof). In other words, "the class inquiry would fracture into mini-trials" to determine whether each individual properly belonged in the class. Certification cannot be granted under such circumstances.

*Ung*, 319 F.R.D. at 542 (citation omitted).

**Advertising.** Individualized questions regarding whether a message constitutes

---

[12] Plaintiff also proposes to exclude from the proposed classes persons who agreed to arbitration provisions. (Mot. 3.) Brew House updated its terms and conditions in 2018 to include an arbitration clause and class action waiver. (DB Decl. ¶ 71.) A comparison of these persons who received text messages to the persons who agreed to these terms likewise requires an individualized inquiry. (*Id.* ¶ 73.)

telemarketing/advertising will predominate over common questions. Plaintiff's claims are limited to supposed telemarketing messages. But the texts exchanged with Plaintiff, as well as the other examples provided in the Biffar Declaration (¶¶ 13, 51), include many messages that do not constitute advertising or telemarketing. *See Zemel v. CSC Holdings LLC,* No. CV 18-2340-BRM-DEA, 2018 WL 6242484, at *5 (D.N.J. Nov. 29, 2018) ("When an individual sends a message inviting a responsive text, there is no TCPA violation."). The Court should therefore deny Plaintiff's request to certify the so-called Autodial Class.

### B. The Proposed Do Not Call "DNC" Class

Plaintiff seeks to certify a "DNC Class" in Count II of his Complaint. Plaintiff purports to plead a claim under the TCPA's "Do Not Call" subsection, 47 U.S.C. § 227(c), based on a purported violation of 47 C.F.R. § 64.1200(d). Specifically, Plaintiff alleges "Defendants violated the TCPA by sending multiple telemarketing text messages to persons who had registered their phone numbers on the national do-not-call list." (Mot. 2.)

The private right of action created by Section 227(c)(5) of the TCPA is limited to redress for *residential telephone subscribers* who have received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations governing "*telephone solicitations*."[13] 47 U.S.C. § 227(c)(5). Both Congress and the FCC have defined "telephone solicitation" to *exclude* "a call or message (A) to any

---

[13] The FCC has acknowledged that its regulatory authority under Section 227(c)(5) is limited to addressing unwanted "telephone solicitations." *In re Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 (2003) (referencing "telephone solicitations" 129 times with respect to the FCC's rulemaking authority).

person with that person's ***prior express invitation or permission***, (B) to any person with whom the caller has an ***established business relationship* [(an 'EBR')]**, or (C) by a tax exempt nonprofit organization."[14]  47 U.S.C. § 227(a)(4) (emphasis added); 47 C.F.R. § 64.1200(f)(14).  Numerous courts have held that there is no private right of action under Section 64.1200(d), finding that the requirements imposed are more appropriately viewed as setting procedural standards, not within the purview of Section 227(c).  *See, e.g.*, *Braver v. Northstar Alarm Svs., LLC*, No. CIV-17-0383-F, 2019 WL 3208651, *14-15 (W.D. Ok. Jul. 16, 2019); *Worsham v. Travel Options, Inc.*, No. 14-2749, 2016 WL 4592373, *7 (D. Md. Sept. 1, 2016); *Burdge v. Ass'n Health Care Mgmt., Inc.*, No. 1:10-cv-00100, 2011 WL 379159, *3-4 (S.D. Ohio Feb. 2, 2011); *but see Charvat v. NMP, LLC*, 656 F.3d 440, 448 (6th Cir. 2011) (indicating, without analysis, that TCPA's subsection (c) was implemented in 47 C.F.R. § 64.1200(d)).  To the extent that there is a private right of action under Section 64.1200(d), there is no question that liability can only be imposed for telephone solicitations—which, by definition, do not include calls made with prior express consent, permission, or calls supported by an EBR (described below).

    ***Consent and Advertising.***  The Court should deny class certification with respect to Count II because, as with Count I, individualized issues predominate with respect to consent and whether the text messages constituted advertising with respect to Plaintiff's

---

[14] Section 227(c)(5) also provides that "[i]t shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection."

proposed DNC Class. Section I(A), *supra*.

**EBR.** For purposes of the TCPA's DNC provisions, EBR is defined to include relationships with customers who engaged in a transaction with the caller "within the eighteen (18) months immediately preceding the date of the telephone call." 47 C.F.R. 64.1200(f)(5). Brew House's credit card records, and Plaintiff's own admissions, demonstrate that Plaintiff had an EBR when each and every text at issue in this case was sent, thereby negating any possibility that Plaintiff can prevail on a DNC claim brought under the TCPA. Whether an EBR existed as to each and every other text recipient, can be shown only through an individualized and time consuming search of credit card transaction and other records, and even then, the search is not conclusive of whether a text recipient has an EBR with Brew House. (DB Decl. ¶¶ 58-62.) For this reason alone, class certification should be denied as to Plaintiff's DNC Claim. *See, e.g.*, *Lindsay Transmission*, 2013 WL 275568, at *5 (holding class treatment inappropriate in TCPA case due to individualized issues of whether an EBR existed with absent class members).

**Residential Telephone Subscribers.** Section 227(c) of the TCPA and Section 64.1200(d) only apply to calls to residential telephone subscribers. *See Lee v. Loandepot.com, LLC*, No. 14-CV-01084-EFM, 2016 WL 4382786, at *6 (D. Kan. Aug. 17, 2016); *Cunningham v. Rapid Responses Mon. Servs., Inc.*, 251 F. Supp. 3d 1187, 1201 (M.D. Tenn. 2017). As set forth in the Biffar Declaration, local businesses and individuals participated in Brew House's Happy Hour Program. (DB Decl. ¶¶ 8-9.) Plaintiff recognizes both of these points, as he defines his proposed "Autodialer Class" to include both "persons and entities," but includes only "persons" (and not entities) in his proposed

"DNC Class." (Mot. 2.) Plaintiff testified, however, that he does not use the phone number at issue for only residential purposes. (LM Decl. Ex. C 25:7-24.)

In *Cunningham*, for example, the Court dismissed the plaintiff's DNC claims because he failed to plead facts sufficient to conclude that his cellular telephone fell within the definition of "residential subscriber" under the TCPA. 251 F. Supp. 3d at 1201. In *Lee*, the Kansas District Court granted summary judgment in favor of a defendant on the plaintiff's DNC claim because the plaintiff failed to "come forward with any evidence showing how he used his cellular phone." 2016 WL 4382786, at *7. Here, each putative class member would have to offer evidence as to whether their particular cellular phone falls within the TCPA's definition of "residential." Such evidence is necessarily individualized and will depend on each absent class member's use of their cellular phones. The Court should therefore deny class certification as to Plaintiff's DNC claim.

## II. MANY PROPOSED CLASS MEMBERS LACK STANDING

A district court may not certify a class if it contains members who lack standing. *See In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011). "If members who lack the ability to bring a suit themselves are included in a class, the court lacks jurisdiction over their claims." *Id.* (internal quotations omitted). To show standing, a plaintiff bears the burden of establishing "injury in fact . . . that is fairly traceable to the challenged action of the defendant." *Id.* (alteration in original) (internal quotations omitted). Thus, to certify a class, Plaintiff must demonstrate that he and all putative class members suffered a concrete injury, and not merely a procedural or technical violation of the TCPA. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).

Plaintiff cannot establish this requirement because his proposed classes would include persons who provided their contact information to enter to win a happy hour, and specifically agreed to receive text messages from Brew House. Even if individualized inquiries proved that some class members did not provide written consent in the strict technical sense, they would still lack standing because they expected and welcomed the messages—as Brew House records demonstrate. *See Legg*, 321 F.R.D. at 577 (where putative class members expected to receive calls, even if their consent was not technically sound for lack of prior express written consent, lack of harm precluded standing and certification due to individualized inquiries into each members' experience); *see also Mayo v. USB Real Estate Sec., Inc.*, No. 08-00568-CV, 2012 WL 4361571, at *5 (W.D. Mo. Sept. 21, 2012). Similarly, even if Brew House failed to meet one of the procedural requirements of Section 64.1200(d), that failure alone does not give rise to standing unless the customer also shows that they were aggrieved by the purported procedural violation. *See Spokeo*, 136 S. Ct. at 1549.

## III. PLAINTIFF FAILS TO SATISFY THE COMMONALITY, TYPICALITY AND ADEQUACY REQUIREMENTS

Plaintiff's discussion of purported "common questions" purposefully avoids the critical issue of consent, as well as other critical issues. Courts in similar TCPA actions have found that questions related to each class members' consent precludes satisfaction of the commonality and/or typicality elements. *See Balthazor v. Cent. Credit Servs., Inc.*, No. 10-62435-CIV, 2012 WL 6725872, at *5 (S.D. Fla. Dec. 27, 2012) (denying class certification "for failure to establish commonality because consent is an individualized

issue")  Likewise, "the presence of a common legal theory does not establish typicality when proof of a violation requires individualized inquiry."  *Elizabeth M. v. Montenez*, 458 F.3d 779, 787 (8th Cir. 2006).  The "sole" common issue that Plaintiff identified for Count I is whether Brew House used an ATDS.  If the Court concludes that Plaintiff is wrong, then the claims would uniformly be resolved in Defendants' favor.  "On the other hand, if plaintiff['s] [legal] theory is correct, many individualized inquiries are required to resolve the class members' claims."  *Powers v. Credit Mgmt. Servs., Inc.*, 776 F.3d 567, 571 (8th Cir. 2015).  The Eighth Circuit has explained that where, as here, resolution of a "common" question in favor of the class still results in individualized inquires being necessary to resolve the class members' claims, the commonality prong is not met.  *Id*.

In addition, Plaintiff's credibility is questionable at best given (i) his personal relationship with lawyers at the Wood Law Firm,[15] and (ii) his unsupported claim that he did not enter to win a happy hour contest or provide contact information to Brew House. Plaintiff's personal circumstances, as opposed to those of the class generally, would become the focus of this litigation, which renders the case inappropriate for class treatment. *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 436-37 (8th Cir. 1999); *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) (vacating certification in a TCPA case because a "named plaintiff who has serious credibility problems or who is likely to devote too much attention to rebutting an individual defense may not be an

---

[15] Apparently, at some point in 2018, Plaintiff learned from his college friend Lindsey Wood, a lawyer at the Wood Law firm that now represents him in this action, that her firm was pursuing a TCPA class action against Brew House.  (LM Decl. Ex. C 32:17-36:16; 89:17-90:14.)

adequate class representative"); *Jovel v. Boiron, Inc.*, No. 11-cv-10803-SVW-SHx, 2014 WL 1027874, at *3 (C.D. Cal. Feb. 27, 2014) (denying certification).

Finally, Plaintiff has not met his burden of establishing that he is represented by adequate counsel. Plaintiff merely makes a series of bald statements, without submitting even a supporting attorney declaration, to claim that his counsel is "experienced" or has "done extensive work" in this case. (Mot. 11.) Rather, the record demonstrates: (a) a highly unusual circumstance of a copycat filing resulting from a disagreement amongst former co-counsel; (b) the appropriation of case materials from a former client, and using those materials in a manner that is antagonistic to the former client; and (c) potential violations of a protective order.

## IV. PLAINTIFF FAILS TO SET FORTH A RELIABLE METHOD TO IDENTIFY CLASS MEMBERS

Finally, Rule 23 contains the implicit requirement that a class "must be adequately defined and clearly ascertainable," such as by reference to objective criteria. *Hicks v. Sw. Energy Co.*, 330 F.R.D. 183, 189 (E.D. Ark. 2018). Plaintiff addresses this element in a sentence, stating that class members "can be ascertained once the text logs and contacts database are produced in this litigation." (Mot. 8.) Of course, Plaintiff cannot prove this without discovery of such material, nor does he explain the process by which members would be readily ascertained through it.

## CONCLUSION

Defendants respectfully requests that the Court deny Plaintiff's Certification Motion.

Dated: July 29, 2019

By: */s/ Jacqueline M. Sexton*

W. James Foland #25022
Jacqueline M. Sexton #53262
Zach T. Bowles #70531
Foland, Wickens, Roper,
Hofer & Crawford, P.C.
1200 Main Street, Suite 2200
Kansas City, MO 64105
(816) 472-7474
jfoland@fwpclaw.com
jsexton@fwpclaw.com
zbowles@fwpclaw.com

Lauri A. Mazzuchetti (*pro hac vice*)
Geoffrey W. Castello (*pro hac vice*)
Whitney M. Smith (*pro hac vice*)
Glenn T. Graham (*pro hac vice*)
KELLEY DRYE & WARREN LLP
One Jefferson Road
Parsippany, New Jersey 07054
(973) 503-5900
lmazzuchetti@kelleydrye.com
gcastello@kelleydrye.com
wsmith@kelleydrye.com
ggraham@kelleydrye.com

*Attorneys for Defendant*
*Outfield Brew House LLC d/b/a*
*Budweiser Brew House*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on this 29th day of July, 2019, a true

and correct copy of the above and foregoing document was filed with the Court's CM-ECF

system which will provide notice to all counsel of record.


*/s/ Jacqueline M. Sexton*
Jacqueline M. Sexton