# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL SEEFELDT, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 4:19-cv-00188 |
| ENTERTAINMENT CONSULTING INTERNATIONAL, LLC, | ) ) ) ) |
| OUTFIELD BREW HOUSE, LLC d/b/a BUDWEISER BREW HOUSE, | ) ) ) |
| Defendants. | ) ) ) |

**DECLARATION OF HANNAH FRIEDENBACH
IN SUPPORT OF DEFENDANTS' OPPOSITION
TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

I, Hannah Friedenbach, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. From April 2015 through November 2016, I was an employee at defendant Outfield Brew House, LLC d/b/a Budweiser Brew House in Ballpark Village, 601 Clark Ave, St. Louis, MO 63102 ("Brew House").

2. I respectfully submit this declaration in support of defendants' opposition to Plaintiff's motion for class certification.

3. Except as otherwise indicated, I make this declaration on the basis of my personal knowledge of the facts and events described below, which knowledge was gained during my work for Brew House.

4. During my employment with Brew House, Brew House offered its patrons

1

opportunities to participate in contests to win happy hour parties. Brew House customers could enter to win a happy hour contest in a variety of ways, including by completing and submitting paper card contest entry forms ("Paper Cards") that were made available to Brew House customers while they were dining and/or visiting Brew House.

5. After the Paper Cards were collected from Brew House customers who elected to enter the contest, the information provided by the customer was recorded on spreadsheets (the "Spreadsheets"). Brew House's policy and practice was to only enter customer information into a Spreadsheet where the Paper Card was signed by the customer.

6. Customers who submitted Paper Cards and then won a Happy Hour Contest were contacted by Brew House by text message to inform them that they had won a happy hour party. When I worked at Brew House, I was one of the few employees who would send text messages to contest winners. My communications with the contest winners frequently resulted in two-way, back-and-forth communications with customers to schedule and plan their happy hour parties.

7. During my employment with Brew House, my responsibilities included: (a) collecting and record keeping with respect to Paper Cards (including by entering information provided on the Paper Cards on Spreadsheets); (b) communicating with the Happy Hour Contest winners by text message and otherwise; and (c) planning the happy hour events.

8. I regularly worked at the happy hour events that I helped plan to, among other things, greet the hosts (the contest winners) and their guests. During these events, I

would often discuss with guests who were eager to win their own party how the contest worked. I often explained that they would be notified by text message if they won, and pointed them to the Paper Cards that included written disclosure and consent language regarding the use of text messages.

9. I have reviewed a Spreadsheet that I created in May 2015. I can tell by reviewing that May 2015 Spreadsheet that, as part of my job duties, I recorded information pertaining to Michael Seefeldt that was provided on a Paper Card submitted to win a happy hour party at Brew House. Specifically, I recorded on the Spreadsheet his name, birthdate, cellular telephone number and favorite beer.

10. I understand that Mr. Seefeldt has taken the position that he never completed a contest entry form of any kind relating to Brew House, and never provided his phone number, date of birth or favorite beer to Brew House. I believe that Mr. Seefeldt is mistaken. There is no other source that I could have received Mr. Seefeldt's information other than a Paper Card that was submitted by a customer at Brew House.

11. I have reviewed the text messages sent by Brew House to Mr. Seefeldt.

12. I see that in May 2015, he responded enthusiastically to a text message sent by my co-worker informing him that he had won a happy hour.

13. On September 6, 2016, I sent Mr. Seefeldt a text message to inform him that he won a happy hour event at Brew House, and he responded positively to that message as well.

14. On September 6, 2016, Mr. Seefeldt and I engaged in the following text messages conversation:

- **Ms. Friedenbach:** Hi Mike! It's Hannah from Budweiser Brew House. It's been awhile so I'd like to invite you back to experience our new Happy Hour! Text CHEERS for info :)
- **Mr. Seefeldt:** Cheers
- **Ms. Friedenbach:** Great! Your party includes discounted drinks & a $25 gift card for YOU to spend on food/drinks for every 5 guests you bring. Would Fri 9/16 or Sat 9/17 work?

15. If Mr. Seefeldt had responded to my text message that he did not enter to win a happy hour, no longer wished to participate in the Brew House contest, or no longer wished to receive text messages, I would have taken steps immediately to make sure he never received another text message.

16. If called as a witness, I would competently testify to all of the foregoing, which is within my personal knowledge or based upon records kept in the course of the regularly conducted business activities of Brew House.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 29, 2019.

_____
HANNAH FRIEDENBACH