# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| MICHAEL SEEFELDT<br>individually and on behalf of<br>all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ENTERTAINMENT CONSULTING<br>INTERNATIONAL, LLC, et al.,<br><br>Defendants. | Case No.: 4:19-cv-00188-SNLJ<br><br>JURY TRIAL DEMANDED |

## PLAINTIFF'S RESPONSE TO DEFENDANTS'
## NOTICE OF SUPPLEMENTAL AUTHORITY

In a second sur-reply (disguised as a "notice of supplemental authority") filed without leave of court, Defendants submitted the *Hunter* decision (decided August 14, 2019) and raised additional arguments that could have been raised in prior briefing. Regardless, Defendants' reliance on *Hunter* is just more of the same by Defendants—*i.e.*, citing wildly inapplicable cases[1] to confuse the Court's class certification analysis.

*Hunter* was a debt-collection call case.[2]  Unlike Seefeldt's case, which requires *prior express written consent*, debt-collection call cases permit consent to be inferred by

---

[1]     Defendants are fully aware that debt-collection call cases like *Hunter* are exempt from the prior express *written* consent requirement applicable here; in fact, Defendants claim the TCPA is unconstitutional precisely because debt-collection calls are exempt from such stringent requirements.  (*See* Docs. 14-15).

[2]     *Hunter v. Time Warner Cable Inc.*, No. 15-CV-6445 (JPO), 2019 U.S. Dist. LEXIS 137495, at *4 (S.D.N.Y. Aug. 14, 2019).

conduct or through specific relationships.[3]   Unlike Seefeldt's case, in *Hunter*, it was undisputed the defendant had consent to call every phone number at issue.[4]   Unlike Seefeldt's case, in *Hunter*, the plaintiff sought to certify a class consisting of entirely of "wrong number" calls—*i.e.*, calls made by the defendant to numbers initially obtained with proper consent, but dialed by defendant when such numbers had unknowingly been reassigned to other persons.[5]   *Hunter* simply has no factual or legal resemblance to this case.

Further, Defendants misinterpret and mischaracterize *Hunter*.  In *Hunter*, the issue was not whether the class was ascertainable; rather, the issue was whether *the difficulty in doing so* would result in individual issues predominating common issues under Rule 23(b)(3).[6]   In *Hunter*, because the class consisted entirely of "wrong number" calls to millions of reassigned phone numbers, a multi-step process would be required to identify each and every class member.[7]   Further, in *Hunter*, because consent can be inferred by conduct (or simply by a relationship) in debt-collection call cases, the court held individual inquires would be required "to determine whether class members may be related to [defendant's] accountholders associated with their phone numbers and whether these

---

[3]   *See e.g.*, *Ginwright v. Exeter Fin. Corp.*, 280 F. Supp. 3d 674, 681-682 (D. Md. 2017) (different consent rules apply in debtor-creditor context; debtor's provision of cell phone number is sufficient evidence of consent but only as to debt-related calls); *compare* 47 C.F.R. §§ 64.1200(a)(1) and (2).

[4]   *Hunter v. Time Warner Cable Inc*., 2019 U.S. Dist. LEXIS 137495, at *39-40.

[5]   *Id*. at *40.

[6]   *Id*. at *27-29; 42-42 ("At the risk of feeding a fed horse, the Court reiterates that the ability to determine class membership—and whether such membership is capable of generalized proof or subject to individualized inquiry—is within the territory of the predominance requirement.").

[7]   *Id.* at *27-39.

relatives have validly provided consent to call the numbers."[8]  Because millions of such inquiries would be required to ascertain the "wrong number" class, and because millions of familial relationships would have to be analyzed, the Court determined that such individual issues predominated the common issues.[9]

Unlike in *Hunter*, here, there is no need to inquire into familial relationships or business relationships that Defendants may have with persons related to class members. Prior express written and signed consent is the only available defense, and Defendants have judicially admitted they do not possess any signatures.

Unlike in *Hunter*, here, there is no need to engage in a multi-step process to identify any class member—let alone millions of class members.  Defendants' general manager testified that Defendants maintain all the data necessary to identify class members.[10]  Here, there is no allegation of any "wrong numbers" and Defendants have not claimed any, either. And even if Defendants eventually become able to show a text was sent to a few reassigned numbers subscribed to persons for whom Defendants actually possess signed consent, a handful of individual inquiries do not overcome the predominance of the common issues central to every class member's claim.

---

[8]      *Hunter v. Time Warner Cable Inc.*, 2019 U.S. Dist. LEXIS 137495, at **43.
[9]      *Id.* at *45-46 ("[The common issues] are overshadowed by the individual inquiries that would be required to determine whether the alleged wrong-number recipients . . . were eligible for class membership or ineligible on grounds of consent.").
[10]      *See* Doc. 32-3 (database shows the date, time, and content of each text message sent, the name, email address, and phone number of each person who was sent a text message, and an error code for a bad phone number or if the message failed for any reason).

Contrast *Hunter* with *Wakefield v. ViSalus, Inc.*, 3:15-cv-01857-SI, (D. Oregon, 8/21/2019) attached as Exhibit 1.  Unlike *Hunter*, *Wakefield* provides some guidance in that, like here, prior express written and signed consent was the applicable legal standard. In *Wakefield*, much like here, the defendant did not have written and signed consent and, just like Defendants here, admitted as much.[11]   Weeks after a class action verdict, the defendant obtained a FCC waiver and sought to raise the defense post-verdict.  The district court denied the motion in the attached opinion.

*Wakefield* is much closer factually and legally to this case, even though it involved pre-recorded calls rather than texts.  *Wakefield* is one of many examples of TCPA cases (especially where prior express written and signed consent is the only available defense) demonstrating the clear suitability of class certification under Rule 23.

Defendants also mischaracterize Plaintiff's reply as relying on public websites to *ascertain* class members.  The cited portion of Plaintiff's reply, however, specifically states: "Once Defendants produce the database in discovery, multiple methods exist *to provide notice* to members of the class [such as Anywho.com and 411.com]." (Doc. 82, p. 20) (emphasis added).  Such services are available if, for purposes of notice, postal addresses are required.  Because Defendants claim to have collected email addresses from class members, postal address may not even be required to provide notice.  Ascertaining *who is in a class* is a different inquiry than determining the most practicable method of

---

[11]    The key difference being that having admitted the lack of signatures, the *Wakefield* defendant did not contest it at trial—unlike the curious approach taken by Defendants here.

*providing notice to* such class members.   Defendants' argument confuses these two concepts.

Defendants assure the Court it will be in "good company" if it refuses class certification.   This Court knows that federal judicial officers are not known by "the company they keep" but rather by the propriety of their legal rulings.   Plaintiff is confident the Court can see the stark differences between *Hunter* and this case and the similarities with *Wakefield* and this case, and consider those in making its ruling.

Dated: August 23, 2019                          Respectfully submitted,


                                        /s/ Anthony L. DeWitt
                                        Anthony L. DeWitt MO41612
                                        Bartimus Frickleton Robertson Rader, PC
                                        109 B East High Street
                                        Jefferson City, MO 65101
                                        573-659-4454

                                        Ari Rodopoulos MO 58777 Wood Law Firm,
                                        LLC 1100 Main Street, Suite 1800
                                        Kansas City, MO 64105 office: 816-559-7645


                                        Edward D. Robertson, III MO58801 (Pro Hac)
                                        Bartimus Frickleton Robertson Rader, PC
                                        11150 Overbrook Road, Suite 200
                                        Leawood, KS 66211
                                        913-266-2300


                                        *Attorneys for Plaintiff and all others similarly
                                        situated*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of August, 2019, the foregoing document was filed with the clerk of the court using the court's CM/ECF system, which will serve notice on all parties of record.

| | |
|---|---|
| Glenn T. Graham | ggraham@kelleydrye.com, docketing@kelleydrye.com |
| Jacqueline M. Sexton | jsexton@fwpclaw.com, lreinier@fwpclaw.com |
| Lauri A. Mazzuchetti | lmazzuchetti@kelleydrye.com |
| Whitney M Smith | wsmith@kelleydrye.com, docketing@kelleydrye.com |
| Zachary T. Bowles | zbowles@fwpclaw.com |

By: /s/ Anthony L. DeWitt
Attorney for Plaintiff