UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL SEEFELDT, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 4:19-cv-00188 ) |
| ENTERTAINMENT CONSULTING INTERNATIONAL, LLC., | ) ) ) |
| and | ) ) |
| OUTFIELD BREW HOUSE, LLC. d/b/a BUDWEISER BREW HOUSE, | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendants' motion to stay (#93), which argues a stay is appropriate in this case pending resolution by the U.S. Supreme Court of *Barr v. American Association of Political Consultants*, Appeal No. 19-631. For the reasons that follow, that motion is **GRANTED**.

The case at hand involves a putative class action against defendants Entertainment Consulting International, LLC. ("ECI") and Outfield Brew House, LLC., d/b/a Budweiser Brew House ("Brew House"), alleging both "developed, acquired, licensed, and/or used custom, high-powered text-messaging programs ('Autodialer') that can select random, sequential, and/or store phone numbers, dial such numbers, and send thousands of unsolicited automated text messages to such numbers." ECI and Brew House purportedly

1

"compiled thousands of cell phone numbers and used the Autodialer to bombard the individuals having such cell phone numbers with special offers, prizes, events, and happy hours via unsolicited text messages." Specifically, named plaintiff Michael Seefeldt takes issue with ECI and Brew House's use of the Autodialer program—between January 24, 2015 and January 24, 2019—to send "unsolicited text messages [to him] and the putative class members promoting specials and events at the Brew House[.]" Seefeldt says these actions are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq*.

The TCPA has been the subject of much appellate discourse lately. First, the government-debt exception has been struck down as unconstitutional. *See .Am. Assoc. of Political Consultants, Inc. v. F.C.C.*, 923 F.3d 159 (4th Cir. 2019) (striking down the TCPA's government-debt exception as unconstitutional, but severing it); *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019) (striking down the TCPA's government-debt exception as unconstitutional, but severing it). Both the Fourth and Ninth Circuits found that the government-debt exception rendered the TCPA "fatally underinclusive" in that it "does not further the purpose of the automated call ban in a narrowly tailored fashion." *Am. Assoc. of Political Consultants, Inc.*, 923 F.3d at 168; *Duguid*, 926 F.3d at 1155. Both courts severed the government-debt exception while leaving the remainder of the TCPA in place. *Am. Assoc. of Political Consultants, Inc.*, 923 F.3d at 171; *Duguid* 926 F.3d at 1156-1157; *see also* 47 U.S.C. § 608. Their decisions are not without criticism, however, as made clear in the United States' intervening brief. Citing *Brickman v. Facebook, Inc.*, 230 F.Supp.3d 1036, 1047 (N.D. Cal. 2017), the United States argues,

apparently on grounds of sovereign immunity, that "[t]he TCPA does not apply to the government"—that is, the TCPA does not impose liability on the government—and thus "the government-debt exception simply acts to protect those who are collecting debts [on its behalf]." As held by the Supreme Court, congress did not waive the government's sovereign immunity in enacting the TCPA, *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 672 (2016), and a congressional act is required in order for third parties to enjoy the government's immunity by way of the derivative immunity doctrine. *See Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18, 20 (1940). Neither the court in *Duguid* nor the court in *Am. Assoc. of Political Consultants* contemplated what effect, if any, this sovereign immunity plays in the underinclusiveness rationale. In any event, the Supreme Court will at least look at these criticisms as raised by the United States in *Barr*. *See* Petition for Writ of Certiorari, Appeal No. 19-631, at pp. 12-13.

Second, in the wake of the D.C. Circuit's decision in *ACA Int'l. v. F.C.C.*, 885 F.3d 687, 695 (D.C. Cir. 2018), which essentially reset the TCPA's definitional landscape, appellate courts have been unable to agree on the exact definition to give to an "autodialer" that lies at the heart of the TCPA's prohibitive mandates. This is a preliminary issue to the determination of whatever possible exceptions might remain following constitutional scrutiny. The problem comes down to a proper interpretation of Section 227(a)(1)(A), which states that autodialer "equipment" must have the "capacity" to "***store*** or ***produce*** telephone numbers to be called, ***using a random or sequential number generator***." 47 U.S.C. § 227(a)(1)(A) (emphasis added). The latter phrase is what has caused so much confusion. Does the phrase "using a random or sequential

3

number generator" modify the verb "store" or "produce," or both? The Third, Seventh, and Eleventh Circuits have all concluded that it is both; an autodialer must be capable of either **storing** telephone numbers using a random or sequential number generator **or produce** such numbers using a random or sequential number generator. *See Gadelhak* v. *AT&T Servs., Inc.*, -- F.3d --, 2020 WL 808270 at *8 (7th Cir. Feb. 19, 2020); *Glasser v. Hilton Grand Vacations Co., LLC*., 948 F.3d 1301, 1306 (11th Cir. 2020); *Dominguez ex rel. Himself v. Yahoo, Inc*., 894 F.3d 116, 119 (3d Cir. 2018). They admit, however, that this definition is "imperfect," *Gadelhak*, -- F.3d --, 2020 WL 808270 at *8, and "runs into [interpretive] hurdles." *Glasser*, 948 F.3d at 1306. Conversely, the Ninth Circuit has concluded the phrase affects only the word produce, not store, such that an autodialer can either be equipment with the capacity to store numbers, or with the capacity to produce numbers to be called using a random or sequential number generator. *Marks v. Crunch San Diego, LLC.,* 904 F.3d 1041, 1049 (9th Cir. 2018). Apparently, as recognized by the Seventh Circuit, there are at least two other options floated around by the district courts suggesting the definition "captures only equipment that *dials* randomly or sequentially generated numbers" or otherwise "describe[s] the manner in which the telephone numbers are to be *called*, regardless of how they are stored, produced, or generated." *Gadelhak*, -- F.3d --, 2020 WL 808270 at *4 (emphasis added).

In this case, defendants have filed a Rule 12(b)(6) motion that takes a notably scattershot approach, attacking *both* Section 227(b) and Section 227(c) of the TCPA under no less than the First Amendment Free Speech Clause, the "Fifth Amendment Equal Protection Clause," and the Fifth Amendment Due Process Clause. But, the

4

government-debt exception issue is certainly front-and-center in their arguments, which now sits before the U.S. Supreme Court in *Barr*. The question in that case, though, is not only whether the government-debt exception is unconstitutional; more importantly, it is also whether the proper remedy was to sever the offending exception from the TCPA, leaving the remainder of the TCPA intact. *See* Petition for Writ of Certiorari, Appeal No. 19-631, at p. I. In their motion to stay, defendants say these issues, challenging the stability of the TCPA at its core, "risk[] inconsistent rulings and otherwise avoidable resources expenditures" in the event this Court decides contrary to the Supreme Court.

This Court finds even more concerning, however, the pending issue of class certification. Plaintiff sought class certification only two months after he filed his case—apparently aided by discovery efforts in substantially similar litigation in the Western District of Missouri. Notably, Judge Harpool in that case recently denied class certification and granted summary judgment to the defendants, in part, because "the platforms [used by Brew House] were not an ATDS under the TCPA." *Beal v. Outfield Brew House, LLC.*, 2020 WL 618839 at *5 (W.D. Mo. Feb. 10, 2020) (granting summary judgment in defendants favor, and denying class certification, because plaintiff's claims could not survive the autodialer definitional adopted by the court). Judge Harpool elected to rely on the autodialer definition of the Third Circuit (and Seventh and Eleventh Circuits), that "an [autodialer] must ***produce*** numbers to be called ***using a random or sequential number generator***." *Id.* (emphasis added) (quoting *Dominquez*, 894 F.3d at 121). He went on to explain that "[t]he platforms at issue in this case could only text individuals whose numbers had been entered into the system manually – either by

5

importing information from a CSV file or individually typing in the number. ***In other words, the system did not generate telephone numbers, it merely stored them*** [via manual entry]." *Id*. (emphasis added). Thus, it was concluded, "[t]his does not constitute an [autodialer]." *Id*. It made no difference, he explained, that the "software can 'randomly-select phone numbers,'" because "that is not the same as generating them [randomly]." *Id*.

With *Beal* in mind, the problem of continuing this case is laid bare: it hinges not only on the problem of the government-debt exception, but also on the definitional problem of what constitutes an autodialer. To be sure, this Court notes plaintiff's complaint seems to specifically rely on the autodialer definition adopted by the Ninth Circuit—that is, an autodialer that can simply "store telephone numbers to be called, regardless of whether those numbers were generate by a random or sequential number generator"—which now sits in a clear appellate minority as against the greater weight of the Third, Seventh, and Eleventh Circuits. Plaintiff's proposed definition was also rejected by the Western District of Missouri. [Doc. #1, P. 5, ¶¶ 21-22]; *see also Gadelhak*, -- F.3d --, 2020 WL 808270 at *4; *Beal*, 2020 WL 618839 at *5. And, as *Beal* shows, a determination on this issue can swing wildly in either side's favor—resulting, potentially, in summary judgment for the defendants. *Compare Beal*, 2020 WL 618839 at *5 (granting summary judgment to defendants on the basis that "the system did not generate telephone numbers, it merely stored them"); *with Smith v. Truman Road Development, LLC*., 414 F.Supp.3d 1205, 1240 (W.D. Mo. 2019) (denying a motion to dismiss by defendants, in part, on the basis that "the systems described in the complaint

6

[are capable of] dial[ing] numbers from a stored list—precisely what is prohibited by the statute").

At this stage, the Supreme Court has not revealed it hand whether it will also take up review of the definitional problem. *See Facebook, Inc. v. Duguid*, Appeal No. 19-511 (case involving issue of the proper definition of an autodialer that was distributed for conference on January 24, 2020, but is without decision whether to grant certiorari). But, without a doubt, it creates that much more uncertainty about the TCPA at large and, specifically, the viability of plaintiff's claims. Of course, what the Supreme Court *has* accepted review of—particularly, whether the government-debt exception is severable from the TCPA if deemed unconstitutional—risks a potential total collapse of the TCPA without regard to the definitional problem. It seems likely that decision, at minimum, will come this term (oral argument has been set for April 22, 2020), which may or may not be a reason why the decision on certiorari in *Duguid* remains pending.

Whatever the case, having studied the matter carefully, it seems the best approach is to wait for much-needed clarity from the Supreme Court—at least as to the government-debt exception problem, but also potentially the definitional problem. Indeed, this Court's has inherent power to stay proceedings as part of its authority "to control the disposition of the causes on its docket with economy of time and effort [in mind] for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance. *Id*. at 254-255. Generally speaking, the Court is to weigh "the potential prejudice or hardship to the parties, as well as the interest

of judicial economy." *St. Louis Heart Ctr, Inc. v. Athenahealth, Inc.*, 2015 WL 6777873 at *5 (E.D. Mo. Nov. 4, 2015).

This rubric favors a stay for the benefit of *both* parties, as well as this Court. For starters, plaintiff says it is defendants who have "shown no likelihood of success on the merits." But, as explained above, *Beal* patently suggests otherwise—defendants won summary judgment in their favor on facts substantially similar to this case. Similarly, plaintiff argues the public interest would be harmed because "land line and cellular telephone lines were being abused" by defendants, which must be stopped. But *Beal* again suggests otherwise, finding the platforms used by Brew House (for the same years at issue, no less) "are not an ATDS under the TCPA." 2020 WL 618839 at *5. Plaintiff also says that discovery efforts will be hampered if a stay is entered, such as dealing with the issue of witness memory recall, but ties none of those allegations to the particulars of this case. Again, with a class certification motion already pending, this Court must confront the issue of defining an autodialer at an early stage—soon if a stay is not entered—that may result in the denial of class certification, as occurred in *Beal* following summary judgment, which all but defeats the need for discovery as a practical matter given the severe reduction in damage potential of this case. *See* 47 U.S.C. § 227(b)(3) (permitting an action for injunctive relief, actual monetary loss, and/or $500 in damages per violation). Finally, plaintiff suggests that judicial economy militates against a stay because "this case is still more than year (sic) from final disposition." Yet, that is precisely why a stay is appropriate, to avoid exhausting judicial resources to decide things like defendants' multifaceted motion to dismiss, plaintiff's pending motion for

class certification, and any possible discovery-related matters or summary judgment motions to follow which may prove fruitless. A (relatively) young case, at least from the standpoint of litigation efforts, if not time alone, favors staying this action. *See St. Louis Heart Ctr., Inc.*, 2015 WL 6777873 at *5 (staying a TCPA action where a Supreme Court decision was pending for, amongst other reasons, the "very young" age of the case that had not yet conducted much discovery and had not yet litigated substantive issues).

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to stay (#93) is **GRANTED**. This Case is **STAYED** pending resolution by the U.S. Supreme Court of *Barr v. American Association of Political Consultants*, Appeal No. 19-631.

So ordered this 25th day of February 2020.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE